# NOTE

October 25, 2004          Worcester          ,          MA
*[Date]*                   *[City]*                    *[State]*

AS BROKLOVCE COLLOR TLLX  Trinity Avenue, Worcester, MA 01605
vslput vlsus lpt                *[Property Address]*

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 216,000.00          (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
. . . . . . . . . . . . . . . . . GMAC Mortgage Corporation
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of          5.625          %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3.  PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the First          day of each month beginning on December 1 2004          . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on November 1, 2034          , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 780, Waterloo, IA 50702-0780, ATTN: Payment Processing          or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 1,243.42          .

## 4.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6.  BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    15          calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be  3.000          % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note, is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
Paul Bonczyk                              -Borrower

_____ (Seal)
Aileen M Bonczyk                          -Borrower

PAY TO THE ORDER OF

WITHOUT RECOURSE

_____ (Seal)
                                          -Borrower

D. Chiodo
Limited Signing Officer
Acting Agent for
GMAC MORTGAGE CORPORATION

_____ (Seal)
                                          -Borrower

*[Sign Original Only]*

Bk: 34957 Pg: 270

Bk: 34957 Pg: 270    Doc: MTG
Page: 1 of 19    10/29/2004 02:40 PM

After Recording Return To:

GMAC Mortgage Corp.
100 Witmer Road
Horsham, PA 19044-0963
ATTN:  Records Management

——————————— [Space Above This Line For Recording Data] ———————————

Loan No.
MIN

## MORTGAGE

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)    "Security Instrument" means this document, which is dated October 25, 2004   , together with all Riders to this document.

(B)    "Borrower" is

Paul F. Bonczyk Aileen M. Bonczyk

Borrower is the mortgagor under this Security Instrument.

(C)    "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

MASSACHUSETTS – Single Family – Fannie Mae/Freddie Mac
UNIFORM INSTRUMENT Form 3022  1/01
*(Page 1 of 18)* 270175039    Initials: *PFB*    346
GMACM - CMS.0019.MA (0401)    *AMB*

PROPERTY ADDRESS: 2 Trinity Avenue, Worcester, Massachusetts

19

**(D)**    "Lender" is
GMAC Mortgage Corporation

Lender is a Corporation                                    organized and existing under the
laws of Pennsylvania                                     . Lender's address is
100 Witmer Road, P.O. Box 963, Horsham, PA  19044

**(E)**    "Note" means the promissory note signed by Borrower and dated October 25,
2004    . The Note states that Borrower owes Lender
Two Hundred Sixteen Thousand and 00/100

Dollars (U.S. $    216,000.00    ) plus interest. Borrower has promised to pay this
debt in regular Periodic Payments and to pay the debt in full not later than
November 1, 2034    .

**(F)**    "Property" means the property that is described below under the heading "Transfer of
Rights in the Property."

**(G)**    "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges
and late charges due under the Note, and all sums due under this Security Instrument, plus
interest.

**(H)**    "Riders" means all Riders to this Security Instrument that are executed by Borrower.
The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider        ☐ Condominium Rider          ☐ Second Home Rider
☐ Balloon Rider                ☐ Biweekly Payment Rider      ☐ 1-4 Family Rider
☐ Other(s) [specify]           ☐ Planned Unit Development Rider

**(I)**    "Applicable Law" means all controlling applicable federal, state and local statutes,
regulations, ordinances and administrative rules and orders (that have the effect of law) as well
as all applicable final, non-appealable judicial opinions.

**(J)**    "Community Association Dues, Fees, and Assessments" means all dues, fees,
assessments and other charges that are imposed on Borrower or the Property by a condominium
association, homeowners association or similar organization.

**(K)**    "Electronic Funds Transfer" means any transfer of funds, other than a transaction
originated by check, draft, or similar paper instrument, which is initiated through an electronic
terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize
a financial institution to debit or credit an account. Such term includes, but is not limited to,
point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone,
wire transfers, and automated clearinghouse transfers.

**(L)**    "Escrow Items" means those items that are described in Section 3.

**(M)**    "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or
proceeds paid by any third party (other than insurance proceeds paid under the coverages
described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or
other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv)
misrepresentations of, or omissions as to, the value and/or condition of the Property.

**MASSACHUSETTS** – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3022  1/01
GMACM - CMS.0019.MA (0401) *(Page 2 of 18)*                    Initials: _P F B_

_AMB_

(N)    "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O)    "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P)    "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q)    "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with the power of sale, the following described property located in the

County

[Type of Recording Jurisdiction]

of  Worcester

[Name of Recording Jurisdiction]

See Attached Schedule A.

which currently has the address of
2 Trinity Avenue,

[Street]

Worcester                    , Massachusetts    01605            ("Property Address"):

[City]                                    [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

MASSACHUSETTS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3022  1/01
GMACM - CMS.0019.MA (0401) *(Page 3 of 18)*                    Initials: *PFB*
                                                                    *AMB*

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

LOAN NO: ▮▮▮▮▮▮▮
MASSACHUSETTS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3022  1/01
GMACM - CMS.0019.MA (0401) *(Page 4 of 18)*          Initials: *PF.B*
                                                                 *AMB*

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees, and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

LOAN NO: ▮▮▮▮▮▮
MASSACHUSETTS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3022 1/01
GMACM - CMS.0019.MA (0401) *(Page 5 of 18)*                    Initials: *PFB*
*AMB*

Bk: 34957 Pg: 275

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts

Bk: 34957 Pg: 276

(including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters,

LOAN NO: ▮▮▮▮▮▮
MASSACHUSETTS -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3022  1/01
GMACM - CMS.0019.MA (0401) *(Page 7 of 18)*            Initials: *PFB*
                                                                *AMB*

Bk: 34957 Pg: 277

or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in

MASSACHUSETTS – Single Family – Fannie Mac/Freddie Mac UNIFORM INSTRUMENT Form 3022 1/01
GMACM - CMS.0019.MA (0401) *(Page 8 of 18)*            Initials: _PFB_
                                                                  AMB

connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the

LOAN NO:
MASSACHUSETTS – Single Family – Fannie Mac/Freddie Mac UNIFORM INSTRUMENT Form 3022 1/01
GMACM - CMS.0019.MA (0401) *(Page 9 of 18)*                    Initials: *PFB*
                                                                          *AMB*

amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until the Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

MASSACHUSETTS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3022  1/01
GMACM - CMS.0019.MA (0401) *(Page 10 of 18)*          Initials: _PFB_
_AMB_

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

LOAN NO: ▮▮▮▮▮▮▮
MASSACHUSETTS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3022 1/01
GMACM - CMS.0019.MA (0401) *(Page 11 of 18)*          Initials: *PFB*
                                                               *AMB*

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**MASSACHUSETTS** – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3022 1/01
GMACM - CMS.0019.MA (0401) *(Page 12 of 18)*          Initials: _PFB_

_AMB_

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All Notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a

LOAN NO: ▉▉▉▉▉▉▉
MASSACHUSETTS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3022 1/01
GMACM - CMS.0019.MA (0401)  *(Page 13 of 18)*          Initials: _PFB_
                                                                          _AMB_

Bk: 34957 Pg: 283

prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17.  Borrower's Copy.**  Borrower shall be given one copy of the Note and of this Security Instrument.

**18.  Transfer of the Property or a Beneficial Interest in Borrower.**  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19.  Borrower's Right to Reinstate After Acceleration.**  If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

MASSACHUSETTS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3022  1/01
GMACM - CMS.0019.MA (0401)  *(Page 14 of 18)*   Initials: _PFB_
_AMB_

Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that

LOAN NO:
MASSACHUSETTS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3022 1/01
GMACM - CMS.0019.MA (0401) *(Page 15 of 18)*                                  Initials: *PFB*
                                                                              *AME*

adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by Applicable Law, in the manner provided by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

MASSACHUSETTS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3022  1/01
GMACM - CMS.0019.MA (0401) *(Page 16 of 18)*                    Initials: _OFB_

AMB

Bk: 34957 Pg: 286

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
Paul F. Bonczyk                                    -Borrower

_____ (Seal)
Aileen M Bonczyk                                  -Borrower

_____ (Seal)
                                                        -Borrower

_____ (Seal)
                                                        -Borrower

Witnesses:

LOAN NO: _____
MASSACHUSETTS – Single Family – Fannie Mae/Freddic Mac UNIFORM INSTRUMENT Form 3022 1/01
GMACM - CMS.0019.MA (0401) *(Page 17 of 18)*

Bk: 34957 Pg: 287

## INDIVIDUAL ACKNOWLEDGMENT

**COMMONWEALTH OF MASSACHUSETTS,**

**COUNTY OF** Worcester                    } SS

On this    25th    day of October              ,    2004   , before
me, the undersigned notary public, personally appeared
Paul Bonczyk Aileen M. Bonczyk

proved to me through satisfactory evidence of identification, which were
Massachusetts Drewer's license
to be the person whose name is signed on the preceding or attached document, and
acknowledged to me that (he) (she) signed it voluntarily for its stated purpose.

Notary Public Signature Mario O. Rivera

My Commission Expires: 4-21-2011

MASSACHUSETTS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3022  1/01
GMACM - CMS.0019.MA (0401) *(Page 18 of 18)*          Initials: _PFB_

*AMD*

Bk: 34957 Pg: 288

EXHIBIT "A" PROPERTY DESCRIPTION
2 Trinity Avenue, Worcester County, Massachusetts 01605-1922

The land in said Worcester, with the buildings thereon, situated on the westerly side of a private street called Trinity Avenue, and bounded and described as follows:

Beginning at a point in the westerly line of said Trinity Avenue distant ninety (90) feet from the southerly line of Lincoln Street;

Thence southerly by said westerly line of Trinity Avenue sixty (60) feet to land now or formerly of one Wesson;

Thence westerly by said Wesson land ninety (90) feet to land now or formerly of Harriet B. Andrews

Thence northerly still by land of said Andrews et ali in a line parallel with the said westerly line of Trinity Avenue sixty (60) feet to a point at other land of said Andrews et ali;

Thence easterly in a line parallel with the second described line ninety (90) feet to the point of beginning.

Being the same premises conveyed to us by deed dated May 5, 1952 and recorded in Worcester District Registry of Deeds in Book 3414, Page 398.

For our title see deed of Andrew A. Athy and Mary F. Athy dated September 28, 1995 and recorded with the Worcester District Registry of Deeds in Book 17354, Page 120.

ATTEST: WORC. Anthony J. Vigliotti, Register

Bk: 34957 Pg: 289

Account No. [REDACTED] ****
Branch No.: 149
Loan Product: 90% CLTV Piggyback

Bk: 34957 Pg: 289    Doc: MTG
Page: 1 of 8    10/29/2004 02:40 PM

MIN [REDACTED]

## MORTGAGE

### THIS MORTGAGE SECURES FUTURE ADVANCES

**THIS MORTGAGE,** as amended and extended *(this "Mortgage")* is signed to secure advances under a GMAC Home Equity Line of Credit agreement *(the "Agreement")*; it is dated as of <u>October 25, 2004</u>, and is made by Paul Bonczyk and Aileen M. Bonczyk who reside(s) at 2 Trinity Ave , Worcester, Massachusetts 01605, as mortgagor(s), who irrevocably mortgages, grants and conveys to GMAC Mortgage Corporation, a Pennsylvania Corporation, 100 Witmer Road, Horsham, PA 19044-0963 (herein "GMAC") and the Mortgage Electronic Registration Systems, Inc., P.O. Box 2026, Flint, MI 48501-2026 ("MERS") acting solely as nominee for GMAC and GMAC's successors and assigns under this Mortgage, as mortgagee.

Throughout this Mortgage, "we", "us" and "our" refer to mortgagor(s). "GMAC" refers to GMAC Mortgage Corporation, a Pennsylvania Corporation located at 100 Witmer Road, Horsham, PA 19044-0963 or its assigns. The "Account" refers to the Home Equity line of credit account established by GMAC under the Agreement. "Borrower" refers to each person who signs the Agreement as borrower. The Agreement and this Mortgage, taken together, are called the "Credit Documents." "Signer" refers to any person (other than GMAC) who has signed a Credit Document.

### DESCRIPTION OF SECURITY

By signing this Mortgage, we mortgage, grant and convey to MERS acting solely as a nominee for GMAC, with MORTGAGE COVENANTS, subject to the terms of this Mortgage, (a) the real estate located at 2 Trinity Avenue , Worcester, County of Worcester, Commonwealth of Massachusetts 01605, more fully described in Schedule A; (b) all buildings and other structures on the property; (c) all rights we may have in any road, alley, easement or license regarding the property or in any mineral, oil, gas or water which is part of the property; (d) all rents and royalties from the property; (e) all proceeds of any insurance on the property and all refunds of premiums on such insurance; (f) all proceeds of any taking (or threatened taking) of the property by any governmental authority *("condemnation")*; and (g) all fixtures on the property at any time *(collectively, the "Property")*.

The Property includes all rights and interests which we now have or which we may acquire in the future. For example, if the security mortgaged under this Mortgage is a leasehold estate and we subsequently acquire fee title to the Property, the rights and interests granted to MERS acting solely as a nominee for GMAC by this Mortgage will include the fee title that we acquire. This Mortgage is also a Security Agreement under the Massachusetts Uniform Commercial Code and we hereby grant MERS acting solely as a nominee for GMAC a security interest in the personal property described in (d) through (f) above.

This Mortgage is upon the STATUTORY CONDITION, for any breach of which GMAC shall have the STATUTORY POWER OF SALE.

### SECURED OBLIGATIONS

THIS MORTGAGE IS GIVEN TO SECURE AN OPEN-END CREDIT PLAN AS DEFINED IN MASS. GEN. LAWS CHAP. 140D, SECTION 1.

We have signed this Mortgage to secure payment to GMAC of up to $27,000.00, plus FINANCE CHARGES and any other amounts due GMAC under the Agreement *(the "Total Balance Outstanding")* and to secure performance by Borrower under the Agreement and our performance of the covenants of this Mortgage *(collectively, the "Secured Obligations")*. GMAC's rights under this Mortgage are in addition to its rights under applicable law.

### PRIORITY OF ADVANCES

The lien of this Mortgage will attach on the date this Mortgage is recorded. The indebtedness evidenced by the Credit Documents is a revolving indebtedness. The Credit Documents provide that amounts may be advanced, repaid and readvanced from time to time in accordance with the terms and provisions of the Agreement. Accordingly, the aggregate advances during the term of the Credit Documents may exceed the Credit Limit. However, the Total Balance Outstanding less FINANCE CHARGES at any time *(the "Earning Balance Outstanding")* shall never exceed the Credit Limit, except for advances made to protect the lien of this Deed of Trust. We agree that the lien and security title of this Deed of Trust shall not be deemed released or extinguished by operation of law or implied intent of the parties if the Total Balance Outstanding is zero as of the date of this Deed of Trust or is from time to time reduced to zero by payments made to GMAC.

GMAC-MA

*(handwritten left margin)* 2 Trinity Ave Worcester

*(handwritten)* PFB
AMB

*(handwritten)* MML: GMAC Mtg Corp
Home Equity Funding
4 Walnut Grove Drive
Horsham PA 19044-0963

*(handwritten)* 8

Bk: 34957 Pg: 290

## REPRESENTATIONS AND DUTIES

We promise that, except for Permitted Liens: (a) we own the Property; (b) we have the right to mortgage the Property to GMAC; and (c) there are no outstanding claims or charges against the Property. The term "Permitted Lien" means (x) any mortgage, deed to secure debt or deed of trust *("security instrument")* disclosed to GMAC by any Signer in applying for the Account, to the extent that the amount secured by such security instrument does not exceed the amount disclosed on such application; and (y) any liens, claims and restrictions of record that do not individually or collectively have a material adverse impact upon GMAC's security, the value of the Property or the Property's current use.

Each of us gives a general warranty of title to GMAC. This means that each of us will be fully responsible for any losses which GMAC suffers because someone has rights in the Property other than Permitted Liens. We promise that we will defend our ownership of the Property against any claims of such right.

We will neither take nor permit any action to partition, subdivide or change the condition of title to all or any part of the Property. We will not amend any Permitted Lien without GMAC's prior written consent.

## CERTAIN PROVISIONS OF THE AGREEMENT

We understand that GMAC may, under certain circumstances set forth in the Agreement, cancel its obligation to make future advances and/or require repayment at once of the Total Balance Outstanding.

Under the Agreement, FINANCE CHARGES are based on the "prime rate" published in The Wall Street Journal or in certain circumstances the "prime rate" published in The New York Times or a similar index selected by GMAC. The rate of FINANCE CHARGES changes on a daily basis as the index or the amount outstanding under the Agreement increases or decreases. We understand that Borrower will not receive advance notice of such changes.

## PROMISES AND AGREEMENTS

We agree with GMAC as follows:

1. **TIMELY PAYMENT.** Except as limited by paragraph 10 below, Borrower shall pay when due, without postponement or extension, all sums owed GMAC under the Credit Documents.

2. **APPLICATION OF PAYMENTS.** All payments shall be applied by GMAC as set forth in the Agreement.

3. **MORTGAGES AND DEEDS OF TRUST; CHARGES; LIENS.** We shall make payments when due and perform all our obligations under any mortgage, deed of trust or other security agreement on the Property.

We shall pay or cause to be paid when due all loans, taxes, assessments, charges, fines, impositions and rents of any kind relating to the Property *("Assessments")*. Receipts evidencing such payments shall be delivered to GMAC upon its request. Except for Permitted Liens, we shall not allow any encumbrance, charge or lien on the Property to become prior to this Mortgage.

4. **HAZARD INSURANCE; CONDEMNATION.**

(a) We shall, at our cost, keep all improvements on the Property insured against loss caused by hazards included in the term "extended coverage" or by other hazards GMAC may reasonably specify. Hazard insurance shall be in an amount equal to the lesser of (i) the full replacement cost of the building that is part of the Property or (ii) the amount of this Mortgage plus the total amount of all Permitted Liens; but never less than the amount necessary to satisfy any coinsurance requirement contained in the insurance policy.

We may choose the insurance company, subject to approval by GMAC which may not be unreasonably withheld. All insurance policies and renewals must be in a form acceptable to GMAC and must include a standard mortgagee clause in favor of GMAC. GMAC shall have the right to hold the policies and renewals, subject to the terms of any Permitted Liens. If we pay the premiums directly, we shall provide GMAC with all renewal notices and, if requested by GMAC, all receipts for premiums. If policies and renewals are held by any other person, we shall supply copies of them to GMAC within ten calendar days after they are issued.

In the event of loss, we shall give prompt notice to the insurance company and GMAC. GMAC may file a proof of loss if we fail to do so promptly.

(b) The proceeds of any condemnation of the Property shall be paid to GMAC, subject to any Permitted Liens. We shall give GMAC notice of any threatened condemnation and sign all documents required to carry out this paragraph 4. No condemnation settlement may be made without GMAC's prior written approval which shall not be unreasonably withheld.

-2-

PFB

AMD

Bk: 34957 Pg: 291

(c) Subject to the terms of any Permitted Lien, GMAC may elect that the proceeds of any insurance or condemnation (after payment of all reasonable costs, expenses and attorneys' fees paid or incurred by GMAC and us) shall be applied to pay the Secured Obligations, to repair or reconstruct the Property, and/or pay us for our loss. In the event that such proceeds are not used entirely for repair and reconstruction, we shall provide GMAC with a new appraisal or valuation of the Property, conducted by a person or entity and in a form reasonably acceptable to GMAC, unless GMAC waives this requirement in writing. The receipt of proceeds shall not cure or waive any default or notice of default under this Mortgage or invalidate any act done pursuant to such notice.

If the Property is abandoned by us, or if we fail to respond to GMAC in writing within 30 calendar days from the date notice of a proposed insurance or condemnation settlement is given to us, GMAC may settle the claim, collect the proceeds and apply them as set forth above.

If the Property is acquired by GMAC, all of our right, title and interest in and to any insurance or condemnation proceeds shall become the property of GMAC to the extent of the sums secured by this Mortgage.

**5. MAINTENANCE OF THE PROPERTY; LEASEHOLDS; CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** We shall: use, improve and maintain the Property in compliance with law; keep the Property in good repair and pay when due all repair costs; prevent waste, impairment and/or deterioration of the Property; and comply with the provisions of any lease of the Property.

If the Property is part of a condominium project or a planned unit development, we shall promptly perform all of our obligations under the governing documents of the project or development.

**6. PROTECTION OF GMAC SECURITY.** We shall appear in and defend any action or proceeding which may affect the security of GMAC under this Mortgage or result in a violation of paragraph 3 above. If such an action is filed, we violate this Mortgage or Borrowers violate the Agreement, then GMAC may disburse funds and do whatever it believes necessary to protect the security of this Mortgage. In doing so, GMAC shall give us notice but it need not make demand or release us from any obligation.

Any amounts paid by GMAC under this paragraph 6, with FINANCE CHARGES at the variable rate in effect under the Agreement, shall be paid by us upon demand. Until paid by us, such amounts are secured by this Mortgage. GMAC is not required to incur any expense or take any action under this Mortgage and no action taken shall release us from any duty.

**7. INSPECTION.** Representatives of GMAC may inspect the Property from time to time. Except in an emergency, GMAC must first give notice specifying reasonable cause for the inspection.

**8. FINANCE CHARGES AFTER END OF ACCOUNT AND/OR JUDGMENT.** To the extent permitted by law, we agree that FINANCE CHARGES after the end of the Account and/or after a judgment is entered shall continue to accrue at the rates and in the manner specified in the Agreement.

**9. OUR CONTINUING DUTIES AND GMAC'S RIGHTS; WAIVERS.** No waiver of any GMAC right under the Credit Documents shall release or limit our liability, Borrower's liability or that of our successors or Borrower's successors, nor shall any waiver affect the lien or priority of this Mortgage. GMAC shall not be required to start proceedings against any successor or modify payment terms by reason of any demand made by us or any successor.

No GMAC act or failure to act shall waive any right under this Mortgage. All waivers must be in writing and signed by GMAC; they shall apply only to the extent and with respect to the event specified in the writing. Obtaining insurance, or paying taxes, other liens or charges shall not be a waiver of GMAC's right to demand payment at once of the sums secured by this Mortgage in the event of a default under the Credit Documents.

**10. SUCCESSORS AND ASSIGNS; JOINT AND SEVERAL LIABILITY; CO-SIGNERS.** This Mortgage shall bind us and our respective successors and permitted assigns for the benefit of GMAC and its successors and assigns. All agreements made by us or any successor are joint and several and may be enforced against each of us or any successor.

Any Signer who does not execute the Agreement (a) is co-signing only to encumber that person's interest in the Property and to release all homestead, dower, curtesy, appraisement, evaluation, redemption, reinstatement, stay, extension, exemption and moratorium laws now existing or hereafter enacted, (b) is not personally liable under the Credit Documents, and (c) agrees that GMAC and any Signer may modify either Credit Document, without consent and without modifying the interests of the rest of us under this Mortgage.

**11. NOTICES.** All notices shall be in writing. Except where applicable law requires otherwise:

(a) GMAC notices shall be hand delivered or mailed by first class, registered or certified mail to the address of the Property or to such other address specified by the addressee in a written notice given to GMAC. Any GMAC notice shall be considered given on the day it is deposited in the U.S. mail or is hand-delivered.

-3-

PFB
AMB

Bk: 34957 Pg: 292

(b) Our notices shall be mailed to GMAC by first class, registered or certified mail to the address for such notices specified on our most recent monthly statement under the Agreement or to such other address specified by GMAC in a written notice given to us. Any such notice shall be considered given on the day it is received by GMAC.

12. GOVERNING LAW. This Mortgage will be governed by federal and Massachusetts law. If any provision is invalid, illegal, or unenforceable, this Mortgage shall be interpreted as if such provision had never been included.

13. COPIES. We shall receive copies of the Credit Documents at the time they are signed or after this Mortgage is recorded.

14. EXERCISING REMEDIES. GMAC may exercise all of the rights and remedies provided by the Credit Documents or law, and any of these rights and remedies may be exercised individually or jointly, once or a number of times. The parties to this document are subject to the provision for Arbitration as set forth in the Agreement which is incorporated by reference as if set forth at length herein.

15. EVENTS OF DEFAULT.

(a) The events set forth in paragraph 15(b) are Events of Default if and when GMAC gives any Signer notice of default. We agree to notify GMAC promptly upon the happening of any event that would be an Event of Default under either Credit Document upon the giving of notice by GMAC.

(b) After giving notice of default, GMAC may end the Account and/or demand repayment at once of the Total Balance Outstanding in any of the following events:

     (i)     There has been fraud or material misrepresentation by any Signer in connection with the Account;

     (ii)    Borrowers have failed to meet the repayment terms of the Agreement for any amount outstanding; or

     (iii)    Any action or inaction by any Signer has adversely affected the Property or any right of GMAC in the Property; to the extent permitted by law, this will include, but not be limited to, any Signer (or any legal representative or successor of any Signer) agreeing to sell, transfer or assign or selling, transferring or assigning any interest in the Property, without the prior written consent of GMAC.

(c) Notwithstanding any language in this Mortgage to the contrary, GMAC will not give notice of default unless permitted by applicable law and GMAC will give us any grace period, right to cure and/or reinstatement right required by applicable law. This paragraph 15 is intended to give GMAC all rights permitted by applicable law.

16. REMEDIES. IF BORROWERS DO NOT REPAY AT ONCE THE TOTAL BALANCE OUTSTANDING WHEN DUE, GMAC MAY EXERCISE ANY REMEDY AVAILABLE TO IT UNDER APPLICABLE LAW, INCLUDING FORECLOSURE.

17. APPOINTMENT OF RECEIVER. Upon an Event of a Default or our failure to pay taxes assessed against the Property and/or insurance premiums on the Property (which we agree shall constitute waste), GMAC shall be entitled to the appointment of a receiver if permitted by law.

18. SATISFACTION OF MORTGAGE. Upon payment and discharge of all sums secured by this Mortgage and termination of the Account, this Mortgage shall be void and GMAC shall satisfy this Mortgage.

19. REQUEST FOR NOTICES. GMAC requests that copies of notices of default, sale and foreclosure from the holder of any lien which has priority over this Mortgage be sent to GMAC at 100 Witmer Road, Horsham, PA 19044-0963.

20. EXHIBITS, SCHEDULES AND RIDERS, ETC. The terms of any Exhibit, Schedule or Rider attached to this Mortgage or executed and recorded with this Mortgage shall be treated as if fully set forth in this Mortgage. All of the terms of the Agreement are made part of this Mortgage.

21. TIME OF ESSENCE. Time is of the essence in this Mortgage.

22. ACTUAL KNOWLEDGE. For purposes of the Credit Documents, GMAC shall not be deemed to have actual knowledge of any fact until it actually receives notice as set forth in paragraph 11 or until it receives written notice thereof from a source GMAC reasonably believes to be reliable. The date of receipt shall be determined by reference to the "Received" date stamped on such written notice by GMAC or its agent.

23. TAXES. If taxes on mortgages or the debts they secure increase in any way after the date of this Mortgage, we shall pay the full amount of any such increase.

24. WAIVER OF STATUTORY RIGHTS. To the extent permitted by law, for ourselves and our successors and assigns, we hereby waive the benefit of all homestead, dower, curtesy, appraisement, valuation, redemption, reinstatement, stay, extension, exemption and moratorium laws now existing or hereafter enacted and any right to have the Property marshalled upon foreclosure. We further agree that any court having jurisdiction may order the Property sold as an entirety.

-4-

PFB
AMB

Bk: 34957 Pg: 293

**25. ASSIGNMENT OF RENTS; RECEIVERS; GMAC POSSESSION OF THE PROPERTY.** As additional security, we hereby assign to GMAC any rents due on the Property after an Event of Default or abandonment of the Property. In any action to foreclose this Mortgage, GMAC shall be entitled to the appointment of a receiver.

If an Event of Default occurs or we abandon the Property, GMAC, without notice, may enter upon, take possession of, and manage the Property. GMAC may then collect or sue in its own name for any rents due on the Property. All rents so collected shall be applied first to payment of the reasonable costs of operation and management of the Property (such as collection costs, receiver's fees, bond premiums and attorneys' fees) and then to the Total Balance Outstanding. GMAC and the receiver must account only for rents actually received.

Acts taken by GMAC under this paragraph 25 shall not cure or waive any Event of Default or invalidate any act done pursuant to notice of default.

We will not, without the written consent of GMAC, receive or collect rent from any tenant on the Property more than one month in advance. Upon an Event of Default, we will pay monthly in advance to GMAC or any receiver the fair and reasonable rental value of the Property or that part of the Property in our possession. If we fail to pay such rent, we will vacate and surrender the Property to GMAC or to such receiver. We may be evicted by summary proceedings.

**26. ATTORNEYS' FEES.** In any proceeding to enforce any remedy of GMAC under the Credit Documents there shall be allowed and included, to the extent permitted by law, as additional indebtedness in the judgment or decree, GMAC's reasonable attorneys' fees, if GMAC refers the Agreement for collection to any attorney who is not a salaried GMAC employee.

**27. CAPTIONS; GENDER; ETC.** The headings in this Mortgage are not to be used to interpret or define its provisions. In this Mortgage, the masculine gender includes the feminine and/or neuter, singular numbers include the plurals, and plurals include the singular.

**28. MERS.** Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Mortgage, but, if necessary to comply with local law or custom MERS (as nominee for GMAC and GMAC's successors and assigns) has the right: to exercise any or all of these interests, including, but not limited to, the right to foreclose and sell the property; and to take any action required of Lender including but not limited to, releasing and canceling this Mortgage.

By signing this Mortgage, we agree to all of the above.

_____
MORTGAGOR Paul Bonczyk
F:

_____
MORTGAGOR Aileen Bonczyk
M,

_____
MORTGAGOR

_____
MORTGAGOR

- 5 -

Bk: 34957 Pg: 294

---

**INDIVIDUAL ACKNOWLEDGMENT**

COMMONWEALTH OF MASSACHUSETTS,

COUNTY OF _Worcester_                    ) SS.

On this __25th__ day of __October__, __2007__ before me, the undersigned notary public, personally appeared Paul Bonczyk And Aileen M. Bonczyk proved to me through satisfactory evidence of identification, which were _Massachusetts Driver's license_
, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that (he) (she) signed it voluntarily for its stated purpose.

_____
Notary Public Signature    Maria D. Rivera-Scuzdakia

My Commission Expires: __4-21-2011__

-6-

PFB
AMB

SCHEDULE A

See Attached Schedule A.

Tax ID Number: 39-11-10

Known as: 2 Trinity Avenue , Worcester, Massachusetts 01605

The land in said Worcester, with the buildings thereon, situated on the westerly side of a private street called Trinity Avenue, and bounded and described as follows:

Beginning at a point in the westerly line of said Trinity Avenue distant ninety (90) feet from the southerly line of Lincoln Street;

Thence southerly by said westerly line of Trinity Avenue sixty (60) feet to land now or formerly of one Wesson;

Thence westerly by said Wesson land ninety (90) feet to land now or formerly of Harriet B. Andrews

Thence northerly still by land of said Andrews et ali in a line parallel with the said westerly line of Trinity Avenue sixty (60) feet to a point at other land of said Andrews et ali;

Thence easterly in a line parallel with the second described line ninety (90) feet to the point of beginning.

Being the same premises conveyed to us by deed dated May 5, 1952 and recorded in Worcester District Registry of Deeds in Book 3414, Page 398.

For our title see deed of Andrew A. Athy and Mary F. Athy dated September 28, 1995 and recorded with the Worcester District Registry of Deeds in Book 17354, Page 120.

PFB
AMB

Bk: 34957 Pg: 296

THIS INSTRUMENT PREPARED BY:
Wendy Cyr
GMAC Mortgage Corporation
4 Walnut Grove Drive
Horsham, PA  19044-0963

MORTGAGE

TO

Recorded At Request of
GMAC Mortgage Corporation

RETURN BY MAIL TO:
GMAC Mortgage Corporation
Home Equity Funding
4 Walnut Grove Drive
Horsham, PA  19044-0963

RESERVE THIS SPACE FOR USE OF RECORDING OFFICE

PFB
PMB

ATTEST: WORC. Anthony J. Vigliotti, Register

Bk: 46302 Pg: 314

Return to:
Orlans Moran PLLC
P. O. Box 5041
Troy, MI 48007-5041



Bk: 46302 Pg: 314
Page: 1 of 1   08/14/2010 11:03 AM  WD

RE: 2 Trinity Avenue, Worcester, MA 01605

## ASSIGNMENT

Mortgage Electronic Registration Systems, Inc.

holder of a mortgage from

Paul F. Bonczyk and Aileen M. Bonczyk

to Mortgage Electronic Registration Systems, Inc.

dated October 25, 2004

recorded with Worcester County (Worcester District) Registry of Deeds in Book 34957, Page 270 assigns said mortgage to GMAC Mortgage, LLC, 3451 Hammond Ave, Waterloo, IA 50702

IN WITNESS WHEREOF the said Mortgage Electronic Registration Systems, Inc. has caused these presents to be signed in its name and behalf by Sarah Hargrove, its Assistant Secretary and Vice President Pursuant to Corporate Resolution and its corporate seal to be hereunto affixed this 9th day of September, 2010.

Mortgage Electronic Registration Systems, Inc.

BY: _____
Sarah Hargrove, Assistant Secretary and Vice President, Pursuant to Corporate Resolution

STATE OF MICHIGAN

COUNTY OF OAKLAND

On this 9th day of September, 2010, before me the undersigned notary public, personally appeared Sarah Hargrove, Assistant Secretary and Vice President Pursuant to Corporate Resolution of Mortgage Electronic Registration Systems, Inc. who I have personal knowledge of identity, to be the person whose name is signed on the proceeding or attached document and acknowledged to me that he/she signed it voluntarily for its stated purpose.

_____
Nicholas A. Kasperek, Notary Public
My Commission Expires: 5/2/2016

File No. 618.6283

NICHOLAS A. KASPEREK
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF MACOMB
My Commission Expires May 2/2016
Acting in the County of Oakland

ATTEST: WORC. Anthony J. Vigliotti, Register

Bk: 51418 Pg: 132

* i

When Recorded Return To:
Green Tree Servicing LLC
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683

GreenTr~~ #  ▮▮▮▮
GMAC #  ▮▮▮▮
FNMA #  ▮▮▮▮
Custodial References#
Effective Date 02/01/2013



Bk: 51418 Pg: 132
Page: 1 of 1  08/28/2013 02:26 PM  WD

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, GMAC MORTGAGE, LLC, WHOSE ADDRESS IS 1100 VIRGINIA DR, FORT WASHINGTON, PA, 19034-3200, (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Mortgage with all interest secured thereby, all liens, and any rights due or to become due thereon to GREEN TREE SERVICING LLC, WHOSE ADDRESS IS 7360 SOUTH KYRENE RD, T314, TEMPE, AZ 85283 (800)643-0202, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).

Said Mortgage bearing the date 10/25/2004, made and executed by PAUL F BONCZYK AND AILEEN M BONCZYK, mortgagor(s), to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR GMAC MORTGAGE CORPORATION, mortgagee, and was recorded in the Office of the Register of Titles and County Recorder for WORCESTER SOUTH County, Massachusetts, in Mortgage Book 34957, Page 270, and/or Document # 2004 00197952.

Property is commonly known as:2 TRINITY AVE, WORCESTER, MA 01605.

IN WITNESS WHEREOF, the said  has caused these present to be executed in its name by its VICE PRESIDENT on  8 / 2 9 /2013 (MM/DD/YYYY).
GMAC MORTGAGE, LLC, by GREEN TREE SERVICING LLC, its Attorney-in-Fact

By: _____
Jessica Sheetz
VICE PRESIDENT
All Authorized Signatories whose signatures appear above are employed by NTC and have reviewed this document and supporting documentation prior to signing.

STATE OF FLORIDA    COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on  8 / 2 2 /2013 (MM/DD/YYYY), by Jessica Sheetz as VICE PRESIDENT for GREEN TREE SERVICING LLC as Attorney-in-Fact for GMAC MORTGAGE, LLC, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

_____
Nicole Baldwin
Notary Public - State of FLORIDA
Commission expires:08/05/2016

Nicole Baldwin
Notary Public State of Florida
My Commission # EE 222285
Expires August 5, 2016

☐ No Mortgage Broker was involved in the placing of this loan.
    Mortgage Broker's Name:
    Address: , ,
    License:

☐ No Mortgage Loan Originator was involved in the placing of this loan.
    Mortgage Loan Originator's Name:
    Address: , ,
    License:

Instrument Prepared By: E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152

[POA] GTGMA  ▮▮▮▮  @ FNMA GMAC 2013    DOCR T1913075507  [C]  FRMMA1

Bk: 56460 Pg: 46

# Worcester South District Registry of Deeds
# Electronically Recorded Document

This is the first page of the document – Do not remove

## Recording Information

| | |
|---|---|
| Document Number | : 143875 |
| Document Type | : ASM |
| Recorded Date | : December 14, 2016 |
| Recorded Time | : 09:51:00 AM |
| Recorded Book and Page | : 56460 / 46 |
| Number of Pages(including cover sheet) | : 3 |
| Receipt Number | : 973797 |
| Recording Fee | : $75.00 |

Worcester South District Registry of Deeds
Anthony J. Vigliotti, Register
90 Front St
Worcester, MA 01608
(508) 798-7717

Bk: 56460  Pg: 47

Prepared By and Return To:
Heather Neal
Collateral Department
Meridian Asset Services, Inc.
780 94th Avenue N., Suite 102
St. Petersburg, FL 33702
(727) 497-4650

Space above for Recorder's use

Loan No: ███████
Sver Ln No: ███████
GS ID: ██████

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, DITECH FINANCIAL LLC FKA GREEN TREE SERVICING LLC, whose address is 1100 LANDMARK TOWERS, 345 ST. PETER STREET, ST. PAUL, MN 55102, (ASSIGNOR), does hereby grant, assign and transfer to MTGLQ INVESTORS, L.P., whose address is 6011 CONNECTION DRIVE, 5TH FLOOR, IRVING TX, 75039, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Mortgage: 10/25/2004
Original Loan Amount: $216,000.00
Executed by (Borrower(s)): PAUL F. BONCZYK AND AILEEN M. BONCZYK
Original Lender:  MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR GMAC MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS
Filed of Record:  In Mortgage Book/Liber/Volume 34957, Page 270,
Document/Instrument No: 2004 00197952 in the Recording District of WORCESTER, MA, Recorded on 10/29/2004.

Property more commonly described as: 2 TRINITY AVENUE, WORCESTER, MASSACHUSETTS 01605

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: _____NOV 1 6 2016_____

DITECH FINANCIAL LLC FKA GREEN TREE SERVICING LLC, BY MTGLQ INVESTORS, L.P., ITS ATTORNEY-IN-FACT

By: STAN BACH
Title: VICE PRESIDENT

Witness Name: _____Monica Hargett

POA was recorded in Pinellas County, FL on
8/23/16 BK 2450 PG 2450 Inst# 2016258490

2396543  FNMA NPL4  3103293

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of    **TEXAS**
County of    **DALLAS**

On **NOV 1 6 2016**, before me, E'meraude A. Rash, a Notary Public, personally appeared STAN BACH, VICE PRESIDENT of/for MTGLQ INVESTORS, L.P., AS ATTORNEY-IN-FACT FOR DITECH FINANCIAL LLC FKA GREEN TREE SERVICING LLC, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of TEXAS that the foregoing paragraph is true and correct. I further certify STAN BACH, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

(Notary Name): E'meraude A. Rash
My commission expires: NOV 1 8 2019

E'MERAUDE A. RASH
Notary Public State of Texas
My Commission # 130444321
My Comm. Exp. November 18, 2019



**COMPARATIVE MARKET ANALYSIS**

P.O. Box 250
Orange, CA 92856
Direct (714) 385-3500
E-Mail valuations@oldrepublictitle.com

Subject Visited: 10/26/2017

**Order Id** 0578163812
**CURRENT TAXES:** 3,673.00
**CMA Type** Exterior 48 hours

| **Property Address** | **City, State, Zip, County** | **Loan Number** |
|---|---|---|
| 2 Trinity Ave | Worcester, MA   01605 | 0578163812 |
| **Old Republic Contact** | **Broker Firm and Contact** | **Telephone #** |
| Henry-Reese, Paula | Preves, Danielle | (508)344-3481 |

| Style | SqFt | # Rooms | # Units | Bed | Bath | Bsmt | Garage | Lot Size | Age | Vacant | Prop Type | Condition |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 Stories | 1770 | 8 | 1 | 4 | 1.5 | Unfinished | None Known | 0.12 Acres | 91 | | SFR Detached | Average |

If Style is "Mobile Home", is it attached? ☐ Yes ☐ No

If condo or other association exists Fees $  0.00   ☒ monthly ☐ annually Current? ☒ Yes ☐ No  Fee Delinquent $

The fee includes  ☐ Insurance ☐ Landscape ☐ Pool ☐ Tennis Other _____

Association contact: _____ Name: _____ Phone No: _____

Project Name: _____ Total number of Units: _____ Legal Action: No

---

**Property Description/Condition**                   **Mortgagor's Name:**                   **Bomczyk, Aileen**

The subject is a typical home for the area in terms of size, age, style, and building materials, but there are no subdivisions here and homes tend to vary in these characteristics, including lot size, even on the same street. The subject should qualify for most financing types, and the most likely buyer will be an owner occupant using conventional financing from a local lender. The subject does abut (in the rear) some commercial properties, and is close to a main road.

| Comparable Sales | Sale Date | SqFt | # Rms | Bed | Bath | Proximity | Bsmt | Garage | Lot Size | Age | DOM | LP@Sale | Sale $ | Owner* |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 653 Lincoln St | 05/22/2017 | 1854 | 8 | 4 | 2 | 1.04 | 50% Finished | 1 Car Garage | 0.34 Acres | 80 | 23 | 249,900.00 | 236,000.00 | Owner Occupant |
| 10 North Parkway | 10/06/2017 | 1990 | 10 | 3 | 2.5 | 0.77 | 50% Finished | 1 Car Garage | 0.39 Acres | 47 | 18 | 269,900.00 | 279,000.00 | Owner Occupant |
| 243 Beverly Rd | 07/28/2017 | 1601 | 7 | 3 | 1.5 | 0.69 | 50% Finished | 2 Car Garage | 0.33Acres | 87 | 26 | 329,900.00 | 325,000.00 | Owner Occupant |

| | Condition | Location | Indicate if comparables are superior, inferior, or similar to subject. If Superior/Inferior, explain why |
|---|---|---|---|
| Comp 1 | Average | Similar | Equal size, age, style, condition, and location, superior baths, part finished basement (-2500), garage (-5000), larger lot (-2500), FP (-1000), FMV sale with concessions (-6000)=218000 |
| Comp 2 | Good | Similar | Equal size but superior location , age, renovated, beds , baths, garage (-5K), lot (-2500), part finished basement (-2500),2 FP (-2000) FMV sale with concessions (-7000) =228500 |
| Comp 3 | Good | Superior | Equal size, age, and style, but upgraded with some custom features including kitchen (-40K), beds (+1000), superior location in one of the premier neighborhoods (-10K), garage (-10K), part finished basement (-2500), lot (-2500), deck (-1000), fenced yard (-1000), FP (-1000), FMV sale with concessions (-1000)=257000 |

Indicate home most comparable to subject ☒ 1  ☐ 2  ☐ 3

| Comparable Listings | Style | SqFt | # Rms | Bed | Bath | Proximity | Bsmt | Garage | Lot Size | Age | DOM | Orig LP $ | Cur LP $ | Owner* |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10 Graystone Circle | Cape Cod | 1856 | 7 | 3 | 2 | 0.81 | Unfinished | 1 Car Garage | 0.3 Acres | 66 | 28 | 180,000.00 | 180,000.00 | REO |
| 5 Miami St | Ranch | 1736 | 10 | 3 | 2 | 0.80 | 50% Finished | 1 Car Garage | 0.34 Acres | 61 | 1 | 293,500.00 | 293,500.00 | Owner Occupant |
| 36 North Pkwy | 2 Stories | 1508 | 5 | 3 | 1 | 0.31 | Unfinished | 1 Car Garage | 0.16 Acres | 67 | 4 | 240,000.00 | 239,999.00 | Owner Occupant |

| | Condition | Location | Indicate if comparables are superior, inferior, or similar to subject. If Superior/Inferior, explain why |
|---|---|---|---|
| Comp 1 | Fair | Similar | Equal size but superior age inferior condition, some freeze damage and needs cosmetics throughout (+20K), superior location (-5K), beds (+1000), garage (-5K), baths (-1000), larger lot (-2500), REO sale=186000 |
| Comp 2 | Good | Superior | Equal size but superior age , location, condition, completely renovated and upgraded with custom finished (-40K), beds (+1000), baths (-1000), garage (-5K), part finished basement (-2500), larger lot (-2500), FP (-1000), fenced yard (-1000), FMV sale=234300 |
| Comp 3 | Average | Similar | Equal size, age, style and location |

Indicate home most comparable to subject                    Indicate home(s) that were personally inspected
☐ 1  ☐ 2  ☒ 3                                             ☐ 1  ☐ 2  ☐ 3

Comments:  CL1: Equal size but superior age inferior condition, some freeze damage and needs cosmetics throughout (+20K), superior location (-5K), beds (+1000), garage (-5K), baths (-1000), larger lot (-2500), REO sale=186000 CL2: Equal size but superior age , location, condition, completely renovated and upgraded with custom finished (-40K), beds (+1000), baths (-1000), garage (-5K), part finished basement (-2500), larger lot (-2500), FP (-1000), fenced yard (-1000), FMV sale=234300 CL3: Equal size, age, style and location
**\* Please indicate owner type: REO (i.e. FNMA, HUD, VA..), Owner Occupant, Investor, Relo.**

---

**Neighborhood Data**

| | Increasing | Stable | Decreasing |
|---|---|---|---|
| Housing Supply | ☐ | ☒ | ☐ |
| Property Values | ☐ | ☒ | ☐ |
| Number of Listings | ☐ | ☒ | ☐ |

Number of listings in immediate area:

Any new construction nearby: ☐ Yes ☒ No  Type ☐ Res. ☐ Com.
Price Range: 0.00                    High: 0.00
Number of Houses in direct competition with subject: 10
Price Range: 159,900.00              High: 299,900.00

Average marketing time of comparable listings 11 Of comparable sales: 22
Describe any negative neighborhood factors that would detract from subject
The subject is located right at the beginning of Trinity Ave, and this is right off Lincoln St which is a main thoroughfare for this part of Worcester, and the subject abuts a commercial plaza. Other than that, this is a fairly popular area.

© 2004 - 2017 Quandis, All Rights Reserved. http://www.quandis.com

 **OLD REPUBLIC SERVICING SOLUTIONS**          **COMPARATIVE MARKET ANALYSIS**

P.O. Box 250
Orange, CA 92856
Direct  (714) 385-3500                        Subject Visited: 10/26/2017
E-Mail valuations@oldrepublictitle.com

**Order Id** 0578163812
**CURRENT TAXES:** 3,673.00
**CMA Type** Exterior 48 hours

| **Rental Market** | Lease Potential 2,000.00 |
|---|---|

| **Market Price Opinion** | Marketing time being defined as: from date of listing to date of contract: | Limited inventory that is NOT new construction on Hillsboro St. DOM have been fairly stable over the summer, and they typically will climb slightly during this season. |
|---|---|---|

Are Repairs Needed? ☐ Yes ☒ No          If Yes, Estimated cost: 0.00          Estimated days to repair from: 0 to: 0

Subject As-Is-High 275,000.00          Subject As-Is-Low 218,000.00          Subject As-Is 240,000.00          Subject Repaired 240,000.00

1. Occupancy: ☒ Owner ☐ Rental ☐ Vacant
If subject property is Vacant, is it SECURED? ☐ Yes ☐ No

Currently listed for sale: ☐ Yes ☒ No
How much: How Long:
Listing Agent:
Phone Number:

2. If fair or poor explain:
Subject appears in average shape

3. Area description: ☐ Urban ☒ Suburban ☐ Rural

4. Will Resale be a Problem? ☐ Yes ☒ No Comments:          Location plays a major role in values in this immediate area. This size of Lincoln St is bisected by the highway, I290, and many homes in this area are impacted by the highway being close to, or right behind, the back yard. In the case of the subject, the proximity to a commercial/retail plaza right next door will play a part in value, and the subject will be competing against homes with larger lots away from these 2 factors.

| **Broker's Signature** | **Telephone:** | **Date:** |
|---|---|---|
| Broker/Agent Signature on file. | 714-385-3500 | 10/27/2017 |
| **Broker Name** | **Broker License Number** | **License Expiration Date:** |
| Danielle Preves | 9078876 | 01/31/2018 |
| **Broker Company Name and Address** | | |
| Re/Max 300, 424 Thompson Rd, Webster, MA 01570 | | |
| **CMA is for:** | | |
| A third party making decisions or performing due diligence related to the potential listing, offering, sale, exchange, option, lease or acquisition price of a parcel of real property. | | |

This document is provided solely for the use of the customer who placed this order. This document is not an appraisal, is not intended as any guarantee of value and/or condition of the subject property, and should not be relied on as such. Old Republic's sole liability for any loss suffered by the customer as a result of customer's use of this report shall be to promptly refund the total fee paid by the customer for this report or to replace it at no charge, but in no event shall Old Republic be responsible for any other damages whatsoever including, but not limited to, special, exemplary, indirect or consequential damages. There are no warranties, express or implied, made in connection with this document, except where required by law.

© 2004 - 2017 Quandis, All Rights Reserved. http://www.quandis.com

**Subject Photos**

Loan No: 0578163812

Order Id: 0578163812

**OLD REPUBLIC SERVICING SOLUTIONS**

| | |
|---|---|
| **Subject Property Address:** Worcester,  MA  01605 | |
| **Mortgagor:** Bomczyk, Aileen | |

**(1) (Front) 20171026_155234_resized.jpg**



**(2) (Address) 20171026_155242_resized.jpg**



**(3) (Street) 20171026_155202_resized.jpg**



**(4) (Street) 20171026_155105_resized.jpg**



**(5) (Exterior) 20171026_155227_resized.jpg**



**(6) (Other) 20171026_155059_resized.jpg**



© 2004 - 2017 Quandis, All Rights Reserved. http://www.quandis.com

**Comparable Sales and Listing Photos**


OLD REPUBLIC SERVICING SOLUTIONS

Loan No: 0578163812
Order Id: 0578163812

| | |
|---|---|
| **Subject Property Address:** Worcester,  MA  01605 | |
| **Mortgagor:** Bomczyk, Aileen | |

**(CS 1) 653 Lincoln St**



**(CL 1) 10 Graystone Circle**



**(CS 2) 10 North Parkway**



**(CL 2) 5 Miami St**



**(CS 3) 243 Beverly Rd**



**(CL 3) 36 North Pkwy**



© 2004 - 2017 Quandis, All Rights Reserved. http://www.quandis.com

**OLD REPUBLIC SERVICING SOLUTIONS**

| Subject Property Address: | Worcester,  MA  01605 |
|---|---|
| Mortgagor: | Bomczyk, Aileen |



### Point Property Street Address

| | | |
|---|---|---|
| A | Subject | 2 Trinity Ave |
| B | Sale #1 | 653 Lincoln St |
| C | Sale #2 | 10 North Parkway |
| D | Sale #3 | 243 Beverly Rd |
| E | Listing #1 | 10 Graystone Circle |
| F | Listing #2 | 5 Miami St |
| G | Listing #3 | 36 North Pkwy |

NOTE: Some properties may be so close together that they do not show as distinct map points.

© 2004 - 2017 Quandis, All Rights Reserved. http://www.quandis.com