**EXHIBIT A**

**Part I**

## FAIRFAX CIRCUIT COURT
## CIVIL CASE COVERSHEET

**2017 04658**

**Parties:**

| Plaintiffs | Defendants |
|---|---|
| 1. U.S. Bank Trust, N.A. as Trustee for LSF9 Master Participation Trust | 1. Theresa K. Fedewa |
| 2. | 2. Lawrence J. Fedewa |
| 3. | 3. Clifton Greens, Inc., et al. |

**\*Plaintiff proceeding without Counsel – Address and Daytime Phone Number required on Complaint**

**Plaintiff Attorney:**

Name: **Michael W. Tompkins**    Bar ID: **31888**

Firm: **Fidelity National Law Group**

Street: **8100 Boone Boulevard, Suite 600**

City: **Vienna**    State: **VA**    Zip: **22182-2649**

Phone Number: **703-245-0286**    Fax Number: **703-821-1618**

E-mail Address: **Michael.Tompkins@fnf.com**

*(stamp)* FILED CIVIL INTAKE 2017 MAR 29 PM 3:31 JOHN T. FREY CLERK, CIRCUIT COURT FAIRFAX, VA

**Nature of Complaint (Check only one)**        **\* Cases in the Civil Tracking Program**

| | | |
|---|---|---|
| Administrative Appeal | Defamation * | Malpractice – Medical * |
| Affirmation of Marriage | Delinquent Taxes * | Mechanics/Vendors Lien * |
| Aid & Guidance | Eminent Domain | Partition * |
| Appeal Decision of Board of Zoning | Encumber/Sell Real Estate | Personal Injury – Assault * |
| Appeal of Process/Judicial Appeal | Erroneous Assessments | Personal Injury – Auto * |
| Appointment Church/Organization Trustees | Expungement | Personal Injury – Emotional * |
| Arbitration | False Arrest/Imprisonment* | Personal Injury – Premises Liability* |
| Attachment | Fiduciary/Estate Complaint | Property Damage* |
| Complaint – Equity  * | Garnishment–Federal–180 days | Products Liability* |
| Complaint – Legal Cause of Action * | Garnishment–Wage–180 days | Quiet Title * |
| Compromise Settlement | Garnishment–Other – 90 days | Real Estate * |
| Condemnation* | Guardian/Conservator Adult | Restoration of Driving Privilege |
| Confession of Judgment | Guardianship/Minor | Vital Record Correction |
| Construction  * | Injunction | Writ Habeas Corpus |
| Contract * | Interpleader | Writ Mandamus |
| Conversion* | Insurance * | Wrongful Death* |
| Court Satisfaction of Judgment | Judicial Review | Wrongful Discharge * |
| Declare Death | Malicious Prosecution * | OTHER: |
| ✓ Declaratory Judgment * | Malpractice – Legal * | |

**Damages in the amount of $ _____ are claimed.**

**Requested Service:** Sheriff ✓ Private Process Server ☐ DMV ☐ Secretary of Commonwealth ✓
State Corporation Commission ✓ Publication ☐ No Service at this time ☐

VIRGINIA:

## IN THE CIRCUIT COURT FOR FAIRFAX COUNTY

U.S. BANK TRUST, N.A., AS TRUSTEE FOR )
LSF9 MASTER PARTICIPATION TRUST, )
                              )
           **Plaintiff,**      )
                              )    Case No. **2017  04658**
v.                         )
                              )
THERESA K. FEDEWA          )
12061 Rose Hall Drive,       )
Clifton, Virginia 20124-2066   )
                              )
and                         )
                              )
LAWRENCE J. FEDEWA     )
12061 Rose Hall Drive,       )
Clifton, Virginia 20124-2066   )
                              )
and                         )
                              )
CLIFTON GREENS, INC.      )
15950 Derwood Road       )
Rockville, Maryland 20855    )
<u>Serve</u>: Commonwealth of Virginia )
        State Corporation Commission )
        1300 East Main Street     )
        Post Office Box 1197      )
        Richmond, Virginia 23218   )
                              )
and                         )    <u>**COMPLAINT**</u>
                              )
KENDAL E. CARSON, TRUSTEE )
6607 Rock Crystal Drive     )
Clifton, Virginia 20124-2524   )
                              )
and                         )

FILED
CIVIL INTAKE
2017 MAR 29  PM 3: 31
JOHN T. FREY
CLERK, CIRCUIT COURT
FAIRFAX, VA

KEVIN F. DeCOSTE, TRUSTEE                  )
1837 Alfresco Place                        )
Louisville, Kentucky 40205                 )
<u>Serve</u>: Secretary of the Commonwealth     )
      Attn: Service of Process          )
      1111 East Broad Street, 4th Floor  )
      Richmond, Virginia 23219          )
                                           )
and                                        )
                                           )
UNITED BANK,                               )
Serve: Neil I. Title, Esquire, R/A         )
      1840 Wilson Boulevard, Suite 205  )
      Arlington, Virginia 22216         )
                                           )
and                                        )
                                           )
DOUGLAS HUSTON, TRUSTEE,                   )
477 Viking Drive, Suite 100                )
Virginia Beach, Virginia 23452             )
                                           )
and                                        )
                                           )
AMERICAN HOME MORTGAGE,                    )
538 Broadhollow Road                       )
Melville, New York 11747                   )
                                           )
and                                        )
                                           )
AMERICAN EXPRESS CENTURION BANK            )
Serve: American Express Centurion, Inc.    )
      CT Corporation System, R/A        )
      4701 Cox Road, Suite 285          )
      Glen Allen, Virginia 23060        )
                                           )
                                           )
        Defendants.              )

---

## COMPLAINT

Plaintiff U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF9 MASTER

PARTICIPATION TRUST ("Plaintiff" or "U.S. Bank Trust"), by and through undersigned

2

counsel, and hereby files its Complaint against the above-named Defendants, and in support

states as follows:

## OBJECT OF THE SUIT

1.      This is an action for equitable and declaratory relief, in connection with the real

property commonly known as 12061 Rose Hall Drive, Clifton, Virginia 20124 (the "Property"),

and more particularly described as follows:

> Lot 3, ROSE HALL, as the same appears attached to a Deed of Division, Dedication and Easement recorded in Deed Book 8945 at Page 628 and corrected in Deed Book 9295 at Page 67, among the land records of Fairfax County, Virginia.
>
> AND BEING A PORTION OF THE PROPERTY acquired by Lawrence J. Fedewa and Theresa K. Fedewa, by Deeds recorded in Deed Book 9824 at Page 1358 and Deed Book 9900 at Page 1695, among the land records of Fairfax County, Virginia.

2.      Plaintiff is the holder of a note secured by, and beneficiary under, a Refinance

deed of trust that was intended to encumber all interests in the Property.

## PARTIES

3.      Plaintiff U.S. Bank Trust, N.A., as Trustee for LSF9 Master Participation Trust

("U.S. Bank Trust") is a Delaware corporation, duly registered and authorized to do business in

the Commonwealth of Virginia, and is the beneficiary of the subject deed of trust on the below-

described property.

4.      Defendant Theresa K. Fedewa ("Ms. Fedewa") is an individual, resident of the

Commonwealth of Virginia, residing at 12061 Rose Hall Drive, Clifton, Virginia 20124 and

grantor of one of the subject deeds of trust.

A-0004

5.   Defendant Lawrence J. Fedewa ("Mr. Fedewa") is an individual, resident of the Commonwealth of Virginia, residing at 12061 Rose Hall Drive, Clifton, Virginia 20124 and grantor of one of the subject deeds of trust.

6.   Defendant Clifton Greens, Inc. ("Clifton Greens") is or was a Maryland corporation which was located at 15950 Derwood Road, Rockville, Maryland 20855.  It was a grantor of one of the subject deeds of trust.

7.   Defendant Kendal E. Carson, Trustee ("Carson") is an individual resident of the Commonwealth of Virginia, residing at 6607 Rock Crystal Drive, Clifton, Virginia 20124, and was a Trustee under one of the subject deeds of trust.

8.   Defendant Kevin F. DeCoste, Trustee ("DeCoste") is an individual resident of the Commonwealth of Kentucky, residing at 1837 Alfresco Place, Louisville, Kentucky 40205, and was a Trustee under one of the subject deeds of trust.

9.   Defendant United Bank ("United Bank"), on information and belief, is the successor to George Mason Bank, which was a Virginia corporation that was the beneficiaries of one of the subject deeds of trust.

10.   Defendant Douglas Huston, Trustee ("Huston") is an individual resident of the Commonwealth of Virginia, residing at 477 Viking Drive, Suite 100, Virginia Beach, Virginia 23452, and was a Trustee under one of the subject deeds of trust.

11.   Defendant American Home Mortgage ("American Home"), on information and belief, is or was a New York Corporation engaged in the business of residential secured loans, and was the beneficiary of one of the subject deeds of trust.

4

12. Defendant American Express Centurion Bank, on information and belief, is a junior judgment creditor of Defendant Lawrence J. Fedewa and may claim an interest in the Property. It is named herein for the purpose of giving it notice of this lawsuit.

## FACTS

13. By Deed dated April 26, 1996 and recorded among the Land Records of the Circuit Court for Fairfax County, Virginia ("Land Records") on April 30, 1996 in Liber 9690 at Folio 0127, as Instrument No. 96055645 (the "Clifton Greens Deed"), Fairfax Station Hunt L.P. conveyed the Property to Defendant Clifton Greens, Inc. A true copy of the Clifton Greens Deed is attached hereto as Exhibit 1.

14. On information and belief, on or about April 26, 1996, Defendant Clifton Greens, Inc. borrowed two million dollars ($2,000,000.00) from George Mason Bank (the "George Mason Loan").

15. By Deed of Trust dated April 26, 1996 and recorded among the Land Records on April 30, 1996 in Liber 9690 beginning at Folio 0128 as Instrument No. 96055646 (the "George Mason Deed of Trust"), Defendant Clifton Greens, Inc. conveyed the Property to Kendal E. Carson, Trustee and Kevin F. DeCoste, Trustee, as security for the George Mason Loan. A true copy of the George Mason Deed of Trust is attached hereto as Exhibit 2.

16. By Deed dated October 2, 1996 and recorded among the Land Records on October 3, 1996 in Liber 9824 beginning at Folio 1358 as Instrument No. 96139176 (the "Fedewa Deed"), Clifton Greens, Inc. conveyed the Property to Defendants Lawrence J. Fedewa and Teresa K. Fedewa. A true copy of the Fedewa Deed is attached hereto as Exhibit 3.

5

17.     There is no record of the George Mason Deed of Trust having been marked satisfied prior to the conveyance of the Property to the Fedewa Defendants.

18.     On information and belief, on or about May 22, 2006, Defendants Theresa K. Fedewa and Lawrence J. Fedewa borrowed one million seven hundred ninety-four thousand dollars ($1,794,000.00) from American Home Mortgage (the "AHM Loan").

19.     By Deed of Trust dated May 22, 2006 and recorded among the Land Records May 30, 2006 in Liber 18490 beginning at Folio 1566 (the "AHM Deed of Trust"), Lawrence J. Fedewa and Theresa K. Fedewa conveyed the Property to Douglas Huston, Trustee, as security for the AHM Loan. A true copy of the AHM Deed of Trust is attached hereto as Exhibit 4.

20.     On information and belief, on or about April 12, 2007, Defendants Theresa K. Fedewa and Lawrence J. Fedewa borrowed one million eight hundred seventy-two thousand dollars ($1,872,000.00) from Washington Mutual Bank, F.A. (the "First Washington Mutual Loan").

21.     By Deed of Trust dated April 12, 2007 and recorded among the Land Records on April 19, 2007 in Liber 19269, beginning at Folio 0975 as Instrument Number 2007011099.002 (the "First Washington Mutual Deed of Trust"), Defendants Theresa K. Fedewa and Lawrence J. Fedewa conveyed the Property to John Burson, Trustee, as security for the First Washington Mutual Loan. A true copy of the First Washington Mutual Deed of Trust is attached hereto as Exhibit 5.

22.     On information and belief, on or about April 12, 2007, Defendants Theresa K. Fedewa and Lawrence J. Fedewa also borrowed one hundred seventeen thousand dollars

6

($117,000.00) from Washington Mutual Bank, F.A. (the "Second Washington Mutual Loan").

23.     By Deed of Trust dated April 12, 2007 and recorded among the Land Records on April 19, 2007 in Liber 19269, beginning at Folio 0948 as Instrument Number 2007011099.001 (the "Second Washington Mutual Deed of Trust"), Defendants Theresa K. Fedewa and Lawrence J. Fedewa conveyed the Property to John Burson, Trustee, as security for the Second Washington Mutual Loan. A true copy of the Second Washington Mutual Deed of Trust is attached hereto as Exhibit 6.

24.     On information and belief, proceeds of the First Washington Mutual Loan were used to pay off the AHM Loan. There is no record, however, of the AHM Deed of Trust having ever been marked satisfied of record.

25.     By Notice of Corporate Assignment of Deed of Trust dated October 27, 2014 and recorded among the Land Records on November 7, 2014 in Liber 23860 beginning at Folio 0962 as Instrument No. 2014030043.002 (the "JPMorgan Assignment"), the Federal Deposit Insurance Corporation, Receiver for Washington Mutual Bank f/k/a Washington Mutual Bank, F.A. assigned the First Washington Mutual Deed of Trust to JPMorgan Chase Bank, N.A. A trust copy of the JPMorgan Assignment is attached hereto as Exhibit 7.

26.     By Notice of Corporate Assignment of Deed of Trust dated October 27, 2014 and recorded among the Land Records on November 7, 2014 in Liber 23860 beginning at Folio 0964 as Instrument No. 2014030043.003 (the "U.S. Bank Assignment"), JPMorgan Chase Bank, N.A. assigned the First Washington Mutual Deed of Trust to Plaintiff U.S. Bank Trust, N.A., as Trustee for LSF9 Master Participation Trust. A true copy of the U.S. Bank Assignment is attached hereto as Exhibit 8.

7

27.    By Abstract of Judgment dated January 13, 2013 and recorded among the Judgment Records of the Circuit Court for Fairfax County, Virginia on February 28, 2013 in Liber 00209 at Folio 0537 (the "American Express Judgment"), American Express Centurion Bank docketed a judgment from the Fairfax County General District Court against Defendant Lawrence J. Fedewa, individually.   Defendant American Express Centurion Bank is named herein for the purpose of giving it notice of this lawsuit.  A true copy of the American Express Judgment is attached hereto as Exhibit 9.

28.    The George Mason Deed of Trust remains a cloud on the Fedewas' title.

29.    The AHM Deed of Trust remains a cloud on the Fedewas' title.

### COUNT I – Declaratory Judgment

30.    Plaintiff hereby incorporates by reference the allegations set forth in all other Paragraphs in this Complaint as is if fully set forth herein.

31.    Plaintiff seeks declaratory relief with respect to its respective interests in and to the Property.  There is an actual controversy of a practicable issue between the parties within the jurisdiction of this Court involving the rights of the parties to the Property pursuant to the various deeds and deeds of trust of record.

32.    Plaintiff is entitled to a declaration regarding what amount, if any, is due under the George Mason Deed of Trust and, if that amount is zero, to a declaration that the George Mason Deed of Trust has been satisfied.

33.    Plaintiff is entitled to a declaration regarding what amount, if any, is due under the AHM Deed of Trust and, if that amount is zero, to a declaration that the AHM Deed of Trust has been satisfied.

34.    WHEREFORE, Plaintiff prays that this Court enter an Order: (1) declaring what amount, if any, is due under the George Mason Deed of Trust and, if that amount is zero,

8

declaring that the George Mason Deed of Trust has been satisfied; (2) declaring what amount, if

any, is due under the AHM Deed of Trust and, if that amount is zero, declaring that the AHM

Deed of Trust has been satisfied; (3) directing the Clerk of the Circuit Court to index the said

Order among the Land Records in the names of all parties hereto; and (4) awarding all such other

relief as the Court may deem just and proper.

Respectfully Submitted,

U.S. BANK TRUST, N.A., AS TRUSTEE FOR
LSF9 MASTER PARTICIPATION TRUST
By Counsel

FIDELITY NATIONAL LAW GROUP
The Law Division of Fidelity National Title Insurance Company

By: *Michael W. Tompkins*
     Michael W. Tompkins, VSB No. 31888
     8100 Boone Boulevard, Suite 600
     Vienna, Virginia 22182-2649
     (T) 703-245-0286
     (F) 703-821-1618
     Michael.Tompkins@fnf.com
     *Counsel for Plaintiff*

9

## EXHIBITS

1.    Deed dated April 26, 1996 and recorded among the Land Records on April 30, 1996 in Liber 9690 at Folio 0127, as Instrument No. 96055645 (the "Clifton Greens Deed").

2.    Deed of Trust dated April 26, 1996 and recorded among the Land Records on April 30, 1996 in Liber 9690 beginning at Folio 0128 as Instrument No. 96055646 (the "George Mason Deed of Trust").

3.    Deed dated October 2, 1996 and recorded among the Land Records on October 3, 1996 in Liber 9824 beginning at Folio 1358 as Instrument No. 96139176 (the "Fedewa Deed").

4.    Deed of Trust dated May 22, 2006 and recorded among the Land Records May 30, 2006 in Liber 18490 beginning at Folio 1566 (the "AHM Deed of Trust").

5.    Deed of Trust dated April 12, 2007 and recorded among the Land Records on April 19, 2007 in Liber 19269, beginning at Folio 0975 as Instrument Number 2007011099.002 (the "First Washington Mutual Deed of Trust").

6.    Deed of Trust dated April 12, 2007 and recorded among the Land Records on April 19, 2007 in Liber 19269, beginning at Folio 0948 as Instrument Number 2007011099.001 (the "Second Washington Mutual Deed of Trust").

7.    Notice of Corporate Assignment of Deed of Trust dated October 27, 2014 and recorded among the Land Records on November 7, 2014 in Liber 23860 beginning at Folio 0962 as Instrument No. 2014030043.002 (the "JPMorgan Assignment").

8.    Notice of Corporate Assignment of Deed of Trust dated October 27, 2014 and recorded among the Land Records on November 7, 2014 in Liber 23860 beginning at Folio 0964 as Instrument No. 2014030043.003 (the "U.S. Bank Assignment").

9.    Abstract of Judgment dated January 13, 2013 and recorded among the Judgment Records of the Circuit Court for Fairfax County, Virginia on February 28, 2013 in Liber 00209 at Folio 0537 (the "American Express Judgment").

96  055645                    APR 30 P 3:16

**THIS DEED** is made effective this 26 day of April , 1996 , by and between FAIRFAX STATION HUNT L.P., a Virginia Limited Partnership, party of the first part ("Grantor") and CLIFTON GREENS, INC., a Maryland Corporation, party of the second part ("Grantee"):

## WITNESSETH:

**THAT FOR** and in consideration of the sum of Ten Dollars ($10.00) cash in hand paid and other good and valuable consideration, receipt of which is hereby acknowledged, the said party of the first part (GRANTOR) does hereby grant, bargain, sell and convey WITH SPECIAL WARRANTY OF TITLE unto the said party of the second part (GRANTEE), all that certain lot or parcel of land, with improvements thereon, situate, lying and being in the County of FAIRFAX, Commonwealth of Virginia, and being more particularly described as follows:

Lots 3, 11, 12, and 18, ROSE HALL, as the same appears on Plat attached to "DEED OF DIVISION, DEDICATION AND EASEMENT" recorded in Deed Book 8945 at Page 628 and corrected in Deed Book 9295 at Page 67, among the land records of Fairfax County, Virginia.

**AND BEING** part of the same property conveyed to the party of the first part by Deed duly recorded in Deed Book 8685 at Page 741, among the aforesaid land records of FAIRFAX County, Virginia.

**THE PARTY** of the first part (GRANTOR) covenants that are seized in fee simple of the land hereby conveyed: that they have done no act to encumber said land other than what is of record, that the party of the second part (GRANTEE) shall have quiet and peaceable possession thereof; and the party of the first part (GRANTOR) covenants that they will execute such further assurances thereof as may be requisite.

**WITNESS** the following signature(s) and seal(s):

FAIRFAX STATION HUNT L.P.
BY: Fairfax Station Hunt, General Partner

By: _____
G. Cory DeSpain, Vice President

STATE OF MARYLAND
COUNTY OF MONTGOMERY, to-wit:

The foregoing instrument was acknowledged before me this 26 day of April , 1994 by G. Cory DeSpain as Vice President of TOLL VA GP Corp., General Partner of FAIRFAX STATION HUNT L.P. on behalf of the partnership.

My commission expires: 2/26/2000                    _____
                                                      Notary Public

Consideration: $ 600,000
Tax Map Reference Number: 086-3-13- 0003, 11, 12 & 18
Mailing Address of Grantee: 15950 Derwood Rd
Rockville, Md 20855

Box 169.

33060

RECORDED FAIRFAX CO VA
APR 30 96
TESTE: T.R.S
CLERK

BK9690 0427

EXHIBIT 1
A-0012

96 055646          APR 30 P 3: 13

Tax Map No. 086-3-13- 0003, 11, 12 & 18

### DEED OF TRUST AND SECURITY AGREEMENT

### THIS IS A CREDIT LINE DEED OF TRUST

THIS DEED OF TRUST AND SECURITY AGREEMENT, made this 26th day of _____April_____, 1996, by and between /CLIFTON GREENS, INC., a Maryland corporation, GRANTOR, hereinafter referred to as the "Grantor", and KENDAL E. CARSON, a resident of the City of Fairfax in the Commonwealth of Virginia, and KEVIN F. DeCOSTE, a resident of the County of Fairfax in the Commonwealth of Virginia, Trustees, GRANTEES, hereinafter collectively referred to as "Trustee".

WHEREAS, the Grantor is justly indebted unto GEORGE MASON BANK, a corporation organized and existing under the laws of the Commonwealth of Virginia, with offices at 11185 Main Street, Fairfax, Virginia 22030, hereinafter referred to as the "Beneficiary", for money borrowed in an amount not to exceed TWO MILLION AND NO/100 DOLLARS ($2,000,000.00), for which amount the said Grantor has made and delivered a certain Deed of Trust Note (Secured Revolving Line of Credit) of even date herewith in like amount; and

WHEREAS, the Grantor desires to secure the Beneficiary and any subsequent holder of the Note secured hereby the full and punctual payment of said debt, when and as the same shall become due and payable, as well as any and all renewals and extensions of said Note, or any part thereof, together with interest thereon, and the performance of the covenants and agreements herein and therein contained, and also to secure the reimbursement to the holder or holders of said Note or to the Trustee or substitute Trustee, and any purchaser or purchasers, grantee or grantees under any sale or sales under the provisions of this Deed of Trust for all money which may be advanced as herein provided for, and for any and all costs and expenses incurred or paid on account of any litigation at law or in equity which may arise in respect to this Deed of Trust, or in respect to the indebtedness or the property herein described, or in obtaining possession of the premises either before or after any sale which may be made as hereinafter provided for; provided, that, the maximum aggregate amount of principal to be secured hereby at any one time is TWO MILLION AND NO/100 DOLLARS ($2,000,000.00).

### ARTICLE I

### DEFINITIONS

1.0  Definitions.

Grantor, Trustee and Beneficiary agree that, unless the context otherwise specifies or requires, the following terms shall have the meaning herein specified, such definitions to be applicable equally to the singular and the plural forms of such terms and to all genders:

(a)  Beneficiary.  The party hereinabove designated as such, its successors and assigns.

(b)  Event(s) of Default.  Any of the happenings, events, circumstances or occurrences described in Article VIII of this Deed of Trust.

(c)  Commitment.  That certain Commitment Letter from the Beneficiary to the Grantor dated March 28, 1996, referencing the loan secured by this Deed of Trust and evidenced by the Note, and all amendments, riders and conditions to said Commitment Letter.



EXHIBIT 2

A-0212

Box 169

33060

PU 5 1 1

8K9590 0128

(d) **Fixtures.** All fixtures located upon or within the Improvements or now or hereafter attached to or installed in, or used in connection with any of the Improvements (excluding those owned by lessees of the Improvements), including, but not limited to, any and all heating, lighting, laundry, incinerating and power equipment, engines, pipes, tanks, motors, conduits, switch-boards, plumbing, lifting, cleaning, fire-prevention, fire-extinguishing, refrigerating, ventilating and communications apparatus, air-cooling and air-conditioning apparatus, elevators, escalators, shades, awnings, draperies, curtains, furniture, furnishings, carpeting and floor coverings, screens, storm doors and windows, stoves, gas and electric ranges, refrigerators, garbage disposals, sump-pumps, washers, dryers, attached cabinets, partitions, ducts and compressors, ornaments, tools, rugs, signs, and including all equipment installed or to be installed or used or usable in connection with the operation of the Improvements and appurtenant facilities erected or to be erected upon the Land or appropriated to the use thereof, and whether affixed or annexed or not.

(e) **Grantor.** The party hereinabove designated as such, its successors and assigns.

(f) **Hazard.** Any (i) "hazardous waste" as defined by the Resource Conservation and Recovery Act of 1976, as amended from time to time, and regulations promulgated thereunder; (ii) "hazardous substance", as defined by the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended from time to time, and the regulations promulgated thereunder; and (iii) substance, the presence of which on the Mortgaged Property is prohibited by any law similar to those set forth in this paragraph, including, but not limited to, asbestos, polychlorinated biphenyls (PCBs), petroleum products and lead-base paints.

(g) **Impositions.** All (i) real estate taxes, personal property taxes and other taxes of every kind and character; and (ii) all general and special assessments, levies, permit fees, inspection fees and license fees; and (iii) all water and sewer rents and charges; and (iv) all other public charges, taxes, assessments, fees, governmental and nongovernmental charges, whether of a like or a different nature, to the extent any of the foregoing are imposed or assessed upon the Grantor or the Mortgaged Property or any part thereof or upon the revenues, rents, avails, issues, income and profits of the Mortgaged Property or arising in respect of the occupancy, use or possession thereof; and (v) any charges for any easement or agreement maintained for the benefit of the Mortgaged Property or arising with respect to any covenant to which the Mortgaged Property is subject; and (vi) any interest, costs or penalties with respect to any of the foregoing.

(h) **Improvements.** Any and all buildings, structures, improvements, alterations or appurtenances now erected or at any time hereafter constructed or placed upon the Land or any portion thereof and any replacements thereof, including, without limitation, all equipment, apparatus, machinery and Fixtures forming a part of such buildings, structures, improvements, alterations or appurtenances.

(i) **Indebtedness.** The principal of and the interest on, and all other amounts, payments and premiums due on account of the Note, the amount of any letters of credit issued by the Beneficiary on behalf of the Grantor, or related parties, in connection with the development of the Mortgaged Property, and all other indebtedness of the Grantor to the Beneficiary payable pursuant to or secured by the Security Documents.

-2-

BK9690 0130

(j) Land. The real estate described in "EXHIBIT A" attached hereto and by this reference made a part hereof.

(k) Loan Agreement. That certain Loan Agreement made and entered into by the Grantor and the Beneficiary of even date herewith, as from time to time amended.

(l) Maturity Date. The maturity date stated in the Note, as from time to time extended.

(m) Mortgaged Property. The Land and the Improvements and the Fixtures and the Personalty, together with:

(i) All rights, privileges, allowances, tenements, reservations, hereditaments, improvements, rights-of-way, easements, accessions, appendages and appurtenances of the Land and the Improvements belonging or in any way appertaining thereto, or which hereafter shall in any way belong, relate or be appurtenant thereto, whether now owned or hereafter acquired by the Grantor; and all right, title and interest of the Grantor in and to any streets, ways, sidewalks, alleys, vaults, strips or gores of land adjoining the land or any portion thereof; and any and all rights and estates in reversion or remainder; and

(ii) All of the Grantor's right, title and interest in and to any award or awards heretofore made or hereafter to be made by any municipal, State or Federal authorities or boards to the present or any subsequent owners of the Land or the Improvements or the Fixtures or the Personalty, including any award or awards or settlements hereafter made resulting from condemnation proceedings or the taking of the Land or the Improvements or the Fixtures or the Personalty, or any part thereof, under the power of eminent domain; and

(iii) All of the Grantor's right, title, interest, estate, claim or demand, either at law or in equity, in and to the Land and the Improvements and the Fixtures and the Personalty; and

(iv) All of the Grantor's right, title, interest, estate, claim or demand, either at law or in equity, to all architectural, engineering and similar plans, specifications, drawings, renderings, profiles, studies, shop drawings, reports, plats, permits, surveys and the like; and all sewer taps, permits and allocations, agreements for utilities, bonds, sureties and the like, relating to the Land or the Improvements or appurtenant facilities erected or to be erected upon or about the Land; and

(v) All proceeds of the conversion, voluntary or involuntary, of any of the foregoing into cash or liquidated claims, including, without limitation, the proceeds of insurance; and

(vi) All leases of the Land and the Improvements now or hereafter entered into by the Grantor and all right, title and interest of the Grantor thereunder, including, without limitation, cash or securities deposited thereunder to secure performance by the lessees of their obligations thereunder, whether such cash or securities are to be held until the expiration of the terms of such leases or applied to one or more of the installments of rent coming due immediately prior to the expiration of such terms, and including, again without limitation, the right upon the happening of an Event of Default to receive and collect the rents thereunder; and

(vii) All contracts and other agreements for the sale of the Land or the Improvements now or hereafter entered into by the Grantor and all right, title and interest of the Grantor

-3-

BK 9690 0131

thereunder, including, without limitation, cash or securities deposited thereunder to secure performance by the contract purchasers of their obligations thereunder, and including, again without limitation, the right, upon an Event of Default, to receive and collect the proceeds thereof; and

(viii) All earnings, revenues, rents, issues, profits, avails and other income of and from the Land or the Improvements, and all undistributed proceeds of the Loan secured by this Deed of Trust.

(n)  Note.  The Deed of Trust Note (Secured Revolving Line of Credit) of the Grantor to the order of the Beneficiary dated of even date herewith in the original principal amount not to exceed TWO MILLION AND NO/100 DOLLARS ($2,000,000.00), and all modifications, amendments and substitutions thereof.

(o)  Obligations.  Any and all of the covenants, promises and other obligations (other than the Indebtedness) made or owing by the Grantor or others to the Beneficiary pursuant to or as otherwise set forth in the Note or the Security Documents.

(p)  Personalty.  All of the right, title, interest, estate, claim or demand of the Grantor in and to any furniture, furnishings, equipment, machinery and other personal property (other than Fixtures), now or hereafter located in, upon or about the Mortgaged Property, including, without limitation any timber or minerals.

(q)  Security Documents.  This Deed of Trust, the Loan Agreement, the Commitment, the Assignment of Permits, Contracts, Plans and Leases, the Hazardous Wastes and Toxic Substances Certificate and Indemnification, all (except the Commitment) dated of even date herewith, any guaranty agreement given to secure the loan evidenced by the Note, any other security agreement or financing statements creating or further evidencing or securing the lien hereof upon the Personalty, any and all documents or instruments collateral thereto, any and all letter of credit applications, agreements, promissory notes or other documents evidencing or given in connection with letters of credit issued by the Beneficiary on behalf of the Grantor, or related parties, in connection with the development of the Mortgaged Property, and any and all other documents now or subsequently securing or further securing the payment of the Indebtedness or the performance of the Obligations, and any amendments thereto.  The terms, conditions and provisions of each of the Security Documents are by this reference incorporated into this Deed of Trust, except that in the event of any conflict with any provision of the Note or any of the other Security Documents, the provision of the Note or the other Security Documents shall govern and control.

(r)  Trustee.  The parties hereinabove designated as such, their successors and substitutes, either of whom may act.

## ARTICLE II

### GRANT

2.0  Grant.

NOW, THEREFORE, the Grantor, in consideration of the premises and of the sum of TEN AND NO/100 DOLLARS ($10.00) lawful money of the United States of America, the receipt of which is hereby acknowledged by the Grantor, and in order to secure the payment of the Indebtedness and the performance and discharge of the Obligations, does by these presents, grant, give, bargain,

—4—

A-0016

BK9690 0132

sell, assign, convey, release, warrant, mortgage, transfer, hypothecate, pledge, set over and confirm unto the Trustee, its successors and assigns forever, in fee simple, the Mortgaged Property, TO HAVE AND TO HOLD the said Mortgaged Property unto the said Trustee, their successors and assigns, forever;

IN TRUST, to secure the payment to the Beneficiary of the Indebtedness at the maturity thereof and all other sums due under the Note or this Deed of Trust and the performance and discharge of the Obligations and of all covenants and agreements in the Note and in the Security Documents, whereupon this Deed of Trust shall cease and be void and the Mortgaged Property shall be released from the lien hereof at the cost of the Grantor.

2.1  After-Acquired Property.

All right, title and interest of the Grantor in and to all extensions, improvements, betterments, renewals, substitutes and replacements of, and all additions and appurtenances to the Mortgaged Property, hereafter acquired by, or released to, the Grantor or constructed, assembled or placed by the Grantor on the Land, and all conversions of the security constituted thereby, immediately upon such acquisition, release, construction, assembling, placement or conversion, as the case may be, and in each such case, without any further deed of trust, conveyance, assignment or other act by the Grantor, shall become subject to the lien of this Deed of Trust as fully and completely, and with the same effect, as though now owned by the Grantor and specifically described in the granting clause hereof, but at any and all times the Grantor will execute and deliver to the Trustee any and all such further assurances, deeds of trust, conveyances or assignments thereof as the Trustee or the Beneficiary may reasonably require for the purpose of expressly and specifically subjecting the same to the lien of this Deed of Trust and the other Security Documents.

2.2  Possession; License.

Until the occurrence of an Event of Default, the Beneficiary shall permit the Grantor to possess and enjoy the Mortgaged Property and does hereby grant to the Grantor a license to receive the rents, issues and profits thereof.

2.3  Condition of Grant.

The condition of these presents is such that if Grantor shall pay or cause to be paid the Indebtedness as and when the same shall become due and payable, and shall observe, perform and discharge the Obligations, then Beneficiary and the Trustee shall release and reconvey unto and at the cost of Grantor the Mortgaged Property.

ARTICLE III

REPRESENTATIONS AND WARRANTIES

3.0  Representations and Warranties.

Grantor hereby represents and warrants to Beneficiary that:

3.1  Organization; Power; Etc.

Grantor, if a corporation, (a) is a corporation duly organized, validly existing and in good standing under the laws of the jurisdiction indicated in the preamble hereof; and, if a partnership, (b) is duly organized and validly existing under the laws of the jurisdiction indicated in the preamble hereof; and, in any event, (c) has the power and authority to own its

A-0017

BK 9690 0133

properties and to carry on its business as now being conducted; and (d) is qualified to do business in avery jurisdiction in which the nature of its business or its properties makes such qualification necessary; and (e) is in compliance with all laws, regulations, ordinances and orders of public authorities applicable to it.

### 3.2  Validity of Loan Instruments.

(a)  The execution, delivery and performance by Grantor of the Note and the Security Documents, and the borrowing evidenced by the Note, (i) are within the legal powers of Grantor, (ii) have been duly authorized by all requisite action, (iii) have received all necessary governmental and other approvals, and (iv) will not violate any provision of law, any order of any court or other agency of government, the articles of incorporation or by-laws of Grantor, if a corporation, or any indenture, agreement or other instrument to which Grantor is a party or by which it or any of its property is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any such indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever upon any of its property or assets, except as contemplated by the provisions of the Security Documents; and (b) the Note and the Security Documents, when executed and delivered by Grantor, will constitute the legal, valid and binding obligations of Grantor and other obligors named therein, if any, in accordance with their respective terms.

### 3.3  Other Information.

All other information, reports, financial statements, papers and data given to Beneficiary with respect to Grantor or to others obligated under the terms of the Security Documents are accurate and correct in all material respects and complete insofar as completeness may be necessary to give Beneficiary a true and accurate knowledge of the subject matter.

### 3.4  Mortgaged Property and Other Property.

Grantor has good and marketable title in fee simple to the Mortgaged Property free and clear of any liens, charges, encumbrances, security interests and adverse claims whatsoever. This Deed of Trust is and will remain a valid and enforceable first lien on the Mortgaged Property.  The Grantor has full power and lawful authority to subject the Mortgaged Property to the lien of this Deed of Trust in the manner and form herein contemplated.  The Grantor will preserve such title, and will forever warrant and defend the same to the Trustee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever.

### 3.5  Taxes.

Grantor has filed all Federal, state, county and municipal income and other tax returns required to have been filed by it and has paid all taxes which have become due pursuant to such returns or pursuant to any assessments received by it, and Grantor does not know of any basis for additional assessment in respect of such taxes.

### 3.6  Litigation.

There is not now pending against or affecting the Grantor or the Mortgaged Property, nor, to the knowledge of Grantor, is there threatened, any action, suit or proceeding at law or in equity or by or before any administrative agency which, if

-6-

A-0018

BK9690 0134

adversely determined, would materially impair or affect its
financial condition of operation, or the Mortgaged Property.

### 3.7  Hazardous Waste.

Grantor warrants and represents that it has investigated or
caused to be investigated the previous ownership and uses of the
Mortgaged Property, in a manner consistent with good commercial
practices, to determine whether activities have been conducted
which might involve the use, manufacturing, storage or disposal
of a Hazard, and this investigation has revealed no fact which
would indicate that the Mortgaged Property has been involved in
the use, manufacturing, storage or disposal of a Hazard. This
investigation has taken into account, among other factors, (i)
the relationship of the purchase price to the value of the
Mortgaged Property if uncontaminated when originally purchased by
Grantor, (ii) commonly known or reasonably ascertainable
information about the Mortgaged Property, and (iii) the
obviousness of the presence or likely presence of contamination
at the Mortgaged Property. Neither the Grantor, nor any tenant
of the Grantor has received any notice from a governmental agency
in connection with the existence of a Hazard, and if such notice
is received, Grantor shall immediately transmit a copy of the
same to the Beneficiary. The Grantor further represents and
warrants that neither the Grantor, nor to the best of its
knowledge any other party, has been or will be involved in
operations at or near the Mortgaged Property, which operations
could lead to (a) the imposition of liability on Grantor or on
any other subsequent or former owner of the Mortgaged Property in
connection with a Hazard; or (b) the creation of a lien on the
Mortgaged Property. The representations, warranties and covenants
of this section shall survive the termination, satisfaction or
release hereof.

### ARTICLE IV

### AFFIRMATIVE COVENANTS

### 4.0  Affirmative Covenants.

Until the entire Indebtedness shall have been paid in full,
Grantor hereby covenants and agrees as follows:

### 4.1  Existence.

Grantor will do any and all things necessary to preserve and
keep in full force and effect its existence, franchises, rights,
privileges and trade names under the laws of the jurisdiction of
its organization and in every jurisdiction in which the nature of
its business or its properties make qualification to do business
necessary.  None of the documents pursuant to which the Grantor
is organized shall be amended or modified in any material respect
without the prior written consent of the Beneficiary.

### 4.2  Compliance with Laws.

Grantor will promptly, fully and faithfully comply with,
conform to and obey all present and future laws, ordinances,
rules, regulations, requirements, decrees and orders of any
governmental authority, governmental agency (including, without
limitation, any Board of Fire Underwriters, environmental agency
or authority relative to any hazardous waste or substance) or
Court having or claiming jurisdiction over the Grantor or the
Mortgaged Property or any part thereof, which may be applicable
to the manner of use, occupancy, possession, operation,
maintenance, alteration, repair, development or reconstruction of
the Mortgaged Property or any part thereof, whether or not such
law, ordinance, rule, regulation, requirement, decree or order

A-0019

BK 9690 0139

shall necessitate changes or improvements or interfere with the use or enjoyment of the Mortgaged Property.

### 4.3  Payment of Impositions.

Grantor will pay and discharge, or cause to be paid and discharged, not later than the due date thereof or the date any fine, penalty, interest or cost may be added thereto or imposed by or pursuant to law for the nonpayment thereof (whichever date shall first occur) or, at the direction of the Beneficiary, as soon as the same become liens, whether or not then due and payable, any Impositions upon or assessed against the Mortgaged Property or any part thereof or upon the revenues, rents, issues, income or profits of the Mortgaged Property or arising in respect of the occupancy, use or possession thereof; provided, however, that in the event no Event of Default hereunder has occurred which remains uncured, and in the event that, by law, any such Imposition may, at the option of the Grantor or other person obligated to pay the same, be paid in installments (whether or not interest shall accrue on the unpaid balance), then the Grantor may exercise the option to pay the same in installments. The Grantor will, upon the request of the Beneficiary, deliver to the Beneficiary from time to time receipts evidencing the payment of all such Impositions.

### 4.4  Other Payments.

Grantor will pay and discharge, from time to time when the same shall become due, all lawful claims and demands of mechanics, materialmen, laborers, and others which, if unpaid, may result in or permit the creation of a lien on the Mortgaged Property or any part thereof, or on the revenues, rents, issues, income or profits of the Mortgaged Property or any part thereof, and the Grantor will, in general, do or cause to be done everything necessary so that the lien hereof shall be fully preserved without cost or expense to the Beneficiary.

### 4.5  Contest of Tax Assessments and the Like.

Nothing in Sections 4.2, 4.3 or 4.4 hereof shall require the payment or discharge of any obligation imposed upon the Grantor by Sections 4.2, 4.3 or 4.4 hereof, so long as the Grantor, at its own cost and expense and after prior written notice to the Beneficiary, shall contest the same or the validity thereof by appropriate legal proceedings promptly initiated and conducted diligently in good faith; provided, however, that such legal proceedings shall operate to suspend the collection thereof and the loss, sale or forfeiture of the Mortgaged Property, and provided further, that during the period such proceedings are pending, the Grantor shall furnish such security as may be required in the proceedings and, at the option of the Beneficiary, the Grantor shall provide security satisfactory to the Beneficiary to assure the payment and discharge of the Grantor's obligation under Sections 4.2, 4.3 or 4.4 hereof and of any additional charge, penalty or expense from or incurred as a result of any such proceedings.

### 4.6  Repairs and Waste.

Grantor will at all times keep and maintain the Mortgaged Property in good order, condition and repair and will promptly make, from time to time, all repairs, renewals, replacements, additions and improvements, interior and exterior, structural and nonstructural, ordinary and extraordinary, foreseen and unforeseen, as may be necessary or desirable to accomplish the purposes of this Section. After completion of the Improvements, the Grantor shall not remove, demolish or substantially alter any of the Improvements without the prior written consent of the

-8-

Beneficiary, nor shall the Grantor remove or permit the removal of any of the Personalty without the prior written consent of the Beneficiary, except in cases where replacements of value at least equal to the value of the Personalty removed, and free of any and all superior lien or claims of title, are immediately made. The Grantor will not commit any waste upon the Mortgaged Property or make or permit any change in the use of the Mortgaged Property which will in any way increase any ordinary fire or other hazard arising out of the operation thereof.

4.7  Insurance.

Grantor will keep the Improvements and the Personalty insured against loss by fire, casualty and such other hazards as may from time to time be required by the Beneficiary for the benefit of the Beneficiary. The Grantor shall maintain such public liability and indemnity insurance as may from time to time be required by the Beneficiary. All such insurance shall be written in forms, amounts and by companies satisfactory to the Beneficiary and losses thereunder shall be payable to the Beneficiary pursuant to a standard mortgagee's endorsement. Duplicate originals of each such policy of insurance shall be delivered to the Beneficiary and the Grantor shall provide the Beneficiary with such evidence of the payment of premiums due on account of such insurance as may from time to time be required by the Beneficiary. All such policies shall provide that the same shall not be invalidated by any waiver of the right of subrogation by any insured and shall provide that the carrier shall have no right to be subrogated to the Beneficiary. All such policies shall provide for at least thirty (30) days' prior written notice to all insureds named thereon (including, without limitation, the Beneficiary) prior to any cancellation, surrender or modification thereof, including without limitation, cancellation for nonpayment of premiums. The Grantor shall give the Beneficiary prompt notice of any loss covered by such insurance and the Beneficiary shall have the right to join the Grantor in adjusting any loss. Any funds received as payment for any loss under any such insurance shall be paid over to the Beneficiary and shall be applied, at the option of the Beneficiary, either to the prepayment of the Indebtedness, without premium or penalty, or to the reimbursement of the Grantor for expenses actually incurred by the Grantor in the restoration or replacement of the Improvements or to the Personalty in the same manner as advances of the loan proceeds are made by Beneficiary under the Loan Agreement.

4.8  Other Insurance.

Grantor shall not apply for or take out separate insurance concurrent or substantially concurrent in form or contributing in the event of loss with that required to be maintained under Section 4.7 unless the Beneficiary is designated thereon as a named insured and unless losses thereunder shall be payable to the Beneficiary pursuant to a standard mortgagee's endorsement.

4.9  Restoration Following Casualty.

In the event of the happening of any casualty (including, without limitation, any casualty for which insurance was not obtained or obtainable) resulting in damage to or destruction of the Mortgaged Property or any part thereof, the Grantor shall give prompt written notice of the time, nature and extent thereto to the Beneficiary and, in the event the Beneficiary elects to apply the proceeds of insurance to the restoration, repair or replacement of the Mortgaged Property or in the event the casualty was not insured, the Grantor shall, at the sole cost and expense of the Grantor and whether or not the proceeds of insurance, if any, are sufficient for the purpose, promptly

-9-

BK9690 0136

BK 9690  0137

commence and diligently continue to restore, repair and replace the Mortgaged Property as nearly as possible to its condition immediately prior to such casualty.

4.10 Performance of Other Agreements.

Grantor will comply in a timely way, and otherwise abide by and perform, all of the terms, agreements, obligations, covenants, restrictions and warranties binding upon the Grantor under any lease, easement, right-of-way, covenant or other agreement with respect to or in any manner affecting the Mortgaged Property or any part thereof, including, without limitation the Security Documents.

4.11 Further Assurances.

Grantor, at its sole cost and expense, will make, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfer and assurances as the Trustee or the Beneficiary shall from time to time require, for the better assuring, conveying, assigning, transferring and confirming unto the Trustee the property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which the Grantor may be or may hereafter become bound to convey or assign to the Trustee, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust and the other Security Documents, or for filing, registering or recording this Deed of Trust and, on demand, will execute and deliver, and hereby authorizes the Trustee or the Beneficiary to execute in the name of the Grantor to the extent it may lawfully do so, one or more financing statements, chattel mortgages or comparable security instruments, to evidence more effectively the lien hereof upon the Personalty.

4.12 Recordation.

Promptly following the execution and delivery hereof, and thereafter from time to time, the Grantor will cause this Deed of Trust and any security instrument creating or evidencing the lien hereof upon the Personalty, and each instrument of further assurance to be filed, registered or recorded in such manner and in such place or places as may be required by any present or future law or by the Beneficiary in order to publish notice and fully to protect the lien hereof upon the Mortgaged Property and the title of the Trustee. The Grantor will pay all filing, registration and recording fees, and all other expenses incident to the execution and acknowledgment of this Deed of Trust, any Deed of Trust supplemental hereto or in modification hereof, any security instrument with respect to the Personalty, and any instrument of further assurance and the like. The Grantor will pay all Federal, State, county and municipal transfer taxes, documentary taxes and other taxes, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of the Note and the execution, delivery, filing, registration and recordation of this Deed of Trust, any Deed of Trust supplemental hereto or in modification hereof, any security instrument with respect to the Personalty, and any instrument of further assurance and the like.

4.13 Advances.

In the event the Grantor shall fail to perform any of the covenants contained in Sections 4.2, 4.3, 4.4, 4.7, 4.9, 4.10, 4.11 or 4.12 of this Deed of Trust, then the Beneficiary, with or without notice to the Grantor, may make advances to perform the same on its behalf, and all sums so advanced shall be a lien upon the Mortgaged Property and shall be secured hereby. The Grantor will repay on demand all sums so advanced on its behalf with

-10-

BK9690 0138

interest at the rate provided in the Note. Any advance made by the Beneficiary pursuant to this Section 4.13 shall not be construed to cure any default by the Grantor in the performance of the covenants contained in Section 4.2, 4.3, 4.4, 4.7, 4.9, 4.10, 4.11 or 4.12 of this Deed of Trust.

### 4.14 Financial Records Inspection.

Grantor will maintain or cause to be maintained full, complete, accurate and adequate records and books of account in accordance with generally accepted accounting principles consistently applied and will permit the Beneficiary and the duly authorized agents, attorneys and accountants of the Beneficiary to visit and inspect the Mortgaged Property and to examine, copy and inspect its records and books of account at all reasonable times. Promptly following the close of each of its fiscal years, the Grantor will deliver to the Beneficiary a balance sheet and a statement of profit and loss. The Grantor will promptly deliver to the Beneficiary such other information with respect to the financial statements of the Grantor as the Beneficiary may from time to time reasonably require. All financial statements of the Grantor shall be prepared in accordance with generally accepted accounting principles consistently applied.

### 4.15 Estoppel Certificates.

Within ten (10) days following any request by the Beneficiary to do so, the Grantor will furnish the Beneficiary and such other persons as the Beneficiary may direct with a written certificate, duly acknowledged, of the amount due on account of the Indebtedness as of the date of such certificate, whether for principal, interest or otherwise and stating in detail whether or not any credits, offsets or defenses exist with respect to the Indebtedness. At the request of the Beneficiary, such certificate shall also contain a statement that the Grantor knows of no Event of Default nor of any other event which, after notice or lapse of time or both, would constitute an Event of Default, which has occurred and remains uncured as of the date of such certificate, or, if any such Event of Default or other such event has occurred and remains uncured as of the date of such certificate, then such certificate shall contain a statement specifying the nature thereof, the time for which the same has continued and the action which the Grantor has taken or proposes to take with respect thereto.

### 4.16 Deposits for Taxes and Related Matters.

The Beneficiary, at its option, may require the Grantor to deposit with the Beneficiary at the time of each payment of an installment of interest or principal under the Note, an additional amount sufficient to accumulate the sum required to discharge the Impositions and the premiums on the insurance required pursuant to Section 4.7 hereof at least thirty (30) days prior to the due date thereof. The determination of the additional amount so payable, and the fractional part thereof to be deposited with the Beneficiary at the time of each payment of an installment under the Note so that the aggregate of such deposits is sufficient to accommodate the purpose of this Section, shall be made by the Beneficiary in its sole and absolute discretion. Any amounts deposited with the Beneficiary pursuant to the provisions of this Section are hereby pledged as additional security for the payment of the Indebtedness. Any amounts deposited with the Beneficiary pursuant to the provisions of this Section shall not be, nor be deemed to be, trust funds, nor shall they operate to curtail or reduce the Indebtedness, and all such amounts may be commingled with the general funds of the Beneficiary. Such amounts shall be held without interest and applied to the payment of the Impositions and the premiums on

A-0023

insurance in respect to which amounts were deposited or, at the option of the Beneficiary, to the payment of said Impositions or premiums on insurance in such order or priority as the Beneficiary shall determine, on or before the respective dates on which the same or any of them would become delinquent. If one month prior to the due date of any of the aforementioned Impositions or the premiums on insurance the amount then on deposit therefor shall be insufficient for the payment of such Impositions or the premiums on insurance in full, the Grantor within ten (10) days after demand shall deposit the amount of the deficiency with the Beneficiary. Nothing contained in this Section shall be deemed to affect any right or remedy of the Beneficiary under any provisions of this Deed of Trust or of any statute or rule of law to pay any such amount and add the amount so paid, together with interest at the rate provided for in the Note, to the Indebtedness. The Beneficiary shall not be liable for any failure to apply to the payment of the Impositions or the premiums on insurance any amounts deposited with the Beneficiary pursuant to the provisions of this Section, unless the Grantor, while no Event of Default exists hereunder, shall have requested Beneficiary in writing to make application of such deposits on hand to the payment of the particular Impositions or the premiums on insurance for the payment of which such deposits were made, accompanied by the bills therefor. In the event the Beneficiary shall not exercise its option to collect the Impositions as aforesaid, the Grantor shall forthwith transmit to the Beneficiary a proof of payment for the Impositions, in a form acceptable to the Beneficiary, no later than thirty (30) days following the due date of said payment.

4.17 Indemnity-Hold Harmless.

Grantor shall forever indemnify and save the Beneficiary and the Trustee harmless from all loss, liability, damage, costs and expenses, including, without limitation, reasonable attorneys' fees, and title and survey costs, incurred by reason of any action, suit, proceeding, hearing, motion or application before any Court or administrative body in or which the Beneficiary or the Trustee may be or become a party by reason of this Deed of Trust, whether as holder of this Deed of Trust, as mortgagee-in-possession, or as successor-in-interest to Grantor, by foreclosure deed or deed in lieu of foreclosure, including, without limitation, with respect to (a) any accident to, injury to or death of persons or loss of or damage to property occurring on or about the Mortgaged Property or the adjoining sidewalks, curbs, vaults or vault space, if any, streets or ways, (b) any use, nonuse or condition of the Mortgaged Property or the adjoining sidewalks, curbs, vaults or vault space, if any, streets or ways, (c) any failure on the part of the Grantor to perform or comply with any of the terms, covenants, conditions and agreements set forth in the Security Documents, (d) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any other part thereof for construction or maintenance or otherwise, (e) any action brought against any party attacking the validity, priority or enforceability of any of the Security Documents, (f) condemnation, (g) bankruptcy, (h) administrative proceedings, and/or (i) any Hazard, the threat of any Hazard, whether or not the same originates or emanates from the Mortgaged Property or any contiguous real estate, or with respect to any other matter affecting the Mortgaged Property within the jurisdiction of the Environmental Protection Agency, and/or any state or municipal authority or agency. All money paid or expended by Beneficiary or Trustee in connection with any of the foregoing, together with interest thereon from day of such payment at the default rate set forth in the Note, shall be so much additional indebtedness secured hereby and, except as otherwise provided herein, shall be immediately and without

-12-

A-0024

notice due and payable by Grantor. The Grantor's obligation under this Section relative to any Hazard shall arise upon the discovery of any Hazard, whether or not any governmental agency or authority has taken or threatened any action in connection with the same. The obligations of the Grantor under this Section shall survive any foreclosure, deed in lieu of foreclosure, release, termination or satisfaction of this Deed of Trust.

**4.18 Payment of Indebtedness.**

Grantor covenants that it will promptly pay and discharge the Indebtedness in strict accordance with the terms and conditions of the Note and Security Documents, at the time, place and manner therein specified and according to the true intent and meaning thereof, all in any coin or currency of the United States of America in immediately available funds, which at the time of such payment shall be legal tender for the payment of public and private debts.

**4.19 Inspection Environmental Audit.**

Grantor will permit the Beneficiary, its agents and consultants to inspect the Mortgaged Property at all reasonable times, and to perform such tests as may be required in connection with an environmental audit, including, but not limited to test borings, toxic analysis and the removal of construction components for further investigation.

**4.20 Taxation of Deed of Trust.**

Grantor will pay any taxes, except income taxes, imposed on Trustee or Beneficiary by reason of their ownership of the Note or this Deed of Trust.

**4.21 Construction of Improvements.**

Grantor will cause the Improvements to be constructed in accordance with the terms of the Loan Agreement, will prosecute such construction with due diligence, will comply with the covenants and agreements made by it therein and will permit no failures of performance thereunder.

**4.22 Loan Proceeds Held in Trust.**

Grantor will receive the advances secured by this Deed of Trust and will hold the right to receive such advances as a trust fund to be applied first for the purpose of paying the costs of completing the Improvements and will apply the same first to the payment of such costs before using any part of the total of the same for any other purpose.

**ARTICLE V**

**NEGATIVE COVENANTS**

**5.0 Negative Covenants.**

Until the Indebtedness shall have been paid in full, Grantor covenants and agrees as follows:

**5.1 Use Violations.**

Grantor will not use or occupy the Mortgaged Property or any part thereof, nor will the Grantor permit or allow the same to be used or occupied, for any unlawful purpose or in violation of any certificate of occupancy or other permit or certificate, or in violation of any law, ordinance or regulation, or any covenants, restrictions or reservations affecting the use or occupancy

-13-

BK9690 0141

thereof, nor will the Grantor suffer any act to be done or any conditions to exist on the Mortgaged Property or any part thereof, or any thing or article to be brought thereon which may be dangerous, including, but not limited to, any Hazard, unless safeguarded as required by law, or which may, in fact or in law, constitute a nuisance, public or private, or which may make void or voidable any insurance then in force or required by the terms of this Deed of Trust to be in force with respect thereto.

## 5.2  Other Liens-Transfers.

Grantor will not, without the prior written consent of the Beneficiary, create or permit to be created or remain, any mortgage, pledge, lien, lease, encumbrance, charge or security interest, or conditional sale or other title retention agreement, with respect to the Mortgaged Property or any part thereof or income therefrom, whether prior or subordinate to the lien of the Security Documents, other than the Security Documents or as provided for in the Security Documents.  Except for any grant, conveyance, sale, assignment or transfer of the Mortgaged Property which is conditioned upon the release of record of this Deed of Trust and the other Security Documents as to that portion of the Mortgaged Property granted, conveyed, sold, assigned or transferred, the Grantor will not, without the prior written consent of the Beneficiary, make, create or consent to any grant, conveyance, sale, assignment or transfer of the Mortgaged Property or any part thereof, other than the Security Documents or as provided for in the Security Documents.

## 5.3  Impairment of Security.

Grantor will take no action which will in any manner impair the value of the Mortgaged Property or the security of this Deed of Trust.

## ARTICLE VI

## ASSIGNMENT OF RENTS-LEASES

## 6.0  Assignment.

In order to further secure the payment of the Indebtedness and the performance and discharge of the Obligations, the Grantor does hereby unconditionally and irrevocably grant, assign, transfer, and set over unto the Beneficiary all right, title, interest and estate of the Grantor in and to any leases of the whole or any part of the Mortgaged Property now or hereafter entered into, including, without limitation, all of the rents, issues and profits thereof and any cash or securities deposited thereunder to secure performance by the lessees of their obligations thereunder, whether such cash or securities are to be held until the expiration of the terms of such leases or applied to one or more installments of rent coming due immediately prior to the expiration of such terms, including further, without limitation, the right, at the election of the Beneficiary, to receive and collect all such rents, issues and profits.  In furtherance of the foregoing assignment, the Grantor irrevocably authorizes the Beneficiary, by its employees and agents, at its option upon the happening of an Event of Default, to enter upon the Mortgaged Property and to collect, in the name of the Grantor or in its own name as assignee, the rents accrued but unpaid and in arrears at the date of such entry, as well as the rents thereafter accruing and becoming payable and, to this end, the Grantor further agrees that it will facilitate in every reasonable way the collection by the Beneficiary of such rents and proceeds, and will, at the written request of the Beneficiary, execute a written notice and deliver the same to each lessee directing the lessee to pay rent to the Beneficiary.

-14-

BK9690 0146

Grantor also irrevocably authorizes the Beneficiary, upon such entry at its option, to take over and assume the management, operation and maintenance of the Mortgaged Property and to perform all acts necessary and proper and to expend such sums out of the income of Mortgaged Property as may be reasonably required in connection therewith, in the same manner and to the same extent as the Grantor might do, including, without limitation, the right to effect new leases, to cancel or surrender existing leases, to alter or amend the terms of existing leases, to renew existing leases or to make concessions to lessees. Grantor hereby releases all claims against the Beneficiary arising out of such management, operation and maintenance except as specifically provided to the contrary in the Security Documents. In no event shall the Beneficiary be accountable for more monies than it actually receives from the Mortgaged Property, nor shall the Beneficiary be liable for any failure to collect the rents; and the right to determine the method of collection and the extent to which enforcement of collection shall be prosecuted is reserved to the sole discretion of the Beneficiary.

6.1  Performance Under Leases.

Grantor, at its cost and expense, will use its best efforts to enforce or secure, or cause to be enforced or secured, the performance of each and every obligation and undertaking of the respective lessees under any leases of the whole or any part of the Mortgaged Property, and will appear in and defend at its cost and expense, any action or proceeding arising under or in any manner connected with such leases or the obligations and undertakings of any lessee thereunder. Grantor, at its cost and expense, will at all times promptly and faithfully perform, or cause to be performed, each and every obligation and undertaking contained in any lease of the whole or any part of the Mortgaged Property and required by the terms thereof to be performed by the lessor.

6.2  Assignments to Third Parties.

Grantor hereby covenants and warrants to the Beneficiary that, except as may be specifically provided for in the Security Documents to the contrary, it has executed no prior assignment or pledge of the rentals of the Mortgaged Property, nor any prior assignment or pledge of its landlord's interest in any lease of the whole or any part of the Mortgaged Property. Grantor will not, without the prior consent of the Beneficiary, execute any assignment or pledge of the rentals of the whole or any part of the Mortgaged Property, nor any assignment or pledge of its landlord's interest in any lease of the whole or any part of the Mortgaged Property, whether prior or subordinate to the lien of the Security Documents, other than the Security Documents or as otherwise permitted by the Security Documents. Grantor further covenants and agrees not to collect the rents of the Mortgaged Property by more than one (1) month in advance other than as required to be paid in advance by the terms of any lease, and further agrees not to do any other act and to refrain from doing any act which would impair or tend to impair the benefits to the Beneficiary of the assignment herein provided for.

6.3  Leases.

Grantor will not, without the prior written consent of the Beneficiary, execute any lease of the whole or any part of the Mortgaged Property. To the extent not provided by applicable law, each lease of the whole or any part of the Mortgaged Property shall provide that, in the event of the enforcement by the Beneficiary of any of the remedies provided to it by law or by the Security Documents, the lessees will, upon the written request of the Beneficiary or any person succeeding to the

-15-

BK 9690  0143

interests of the Grantor as a result of such enforcement, automatically become the tenant of the Beneficiary or such successor in interest, as the circumstances may require, without change in the terms of the Lease; provided, however, that the Beneficiary and any such successor in interest shall not be bound by any payment of rent in advance for more than thirty (30) days or by any amendment or modification of the lease made subsequent to the date of recordation of this Deed of Trust without the consent of the Beneficiary or such successor in interest. Each lease of the whole or any part of the Mortgaged Property shall provide that, upon request by the Beneficiary or any such successor in interest, the lessee shall execute and deliver to the Beneficiary or any such successor in interest an instrument or instruments confirming such attornment. All such leases now in effect or entered into hereafter shall be subordinate to this Deed of Trust. Each lease of the whole or any part of the Mortgaged Property shall prohibit the use of the Mortgaged Property for any activity involving, directly or indirectly, the use, generation, treatment, storage or disposal of any Hazard, and shall require that the tenant indemnify and hold the landlord harmless from any and all costs, expenses, losses, actions, suits, claims, judgments, and other liability whatsoever in connection with a breach by tenant of any federal, state or local environmental protection laws and regulations.

ARTICLE VII

EMINENT DOMAIN CONDEMNATION

7.0  <u>Notice.</u>

Grantor shall give the Trustee and the Beneficiary prompt written notice of the actual or threatened commencement of any proceedings under the power of condemnation or eminent domain affecting all or any part of the Mortgaged Property, and the Grantor will deliver to the Trustee and the Beneficiary true and complete copies of any and all documents and papers served upon the Grantor in connection with any such proceedings promptly following receipt thereof by the Grantor.

7.1  <u>Assignment of Condemnation Awards.</u>

Grantor hereby irrevocably assigns, transfers and sets over unto the Beneficiary all right, title, interest and estate of the Grantor in and to any award or payment made in respect of any proceeding under the power of condemnation or eminent domain relating to the Mortgaged Property and initiated subsequent to the recordation of this Deed of Trust, including, without limiting the generality of the foregoing: (a) any taking, whether permanent or temporary, of the Mortgaged Property or any part thereof or interest therein as a result of, or by agreement in anticipation or in lieu of, any exercise of the power of condemnation or eminent domain; and (b) any such taking of any appurtenances to the Mortgaged Property or of vaults, areas, projections or the like outside the boundaries of the Mortgaged Property, or rights or interests in, below or above the ways, streets or alleys adjacent or proximate to the Mortgaged Property, or rights or benefits of light, air, view or access to the Mortgaged Property of said ways, streets or alleys, or for the taking of space or rights therein or below or above the Mortgaged Property; and (c) any damage to the Mortgaged Property or any part thereof due to governmental action affecting but not resulting in a taking of the Mortgaged Property, including, by way of example and not by way of limitation, the changing of the grade of a street adjacent or proximate to the Mortgaged Property;

-16-

A-0028

BK9690 0144

## 7.2  Prosecution-Diligence.

Grantor covenants and agrees to initiate its claim or claims for any such award or payment promptly, to prosecute the same diligently and in good faith and to cause the same to be collected and paid over to the Beneficiary, and the Grantor hereby irrevocably authorizes the Beneficiary, in the name of the Grantor or otherwise, to collect and issue receipt for any such award or payment and, in the event the Grantor fails to act or in the event any Event of Default has occurred which has not been cured, to initiate and prosecute such claim or claims.

## 7.3  Application of Proceeds.

All proceeds received by or for the account of the Beneficiary as a result of, or by agreement in anticipation or in lieu of, any exercise of the power of condemnation or eminent domain with respect to the Mortgaged Property, shall be applied by the Beneficiary in the following order or priority: (a) to reimburse the Beneficiary for all costs and expenses actually and reasonably incurred by the Beneficiary in connection with the collection of such award or payment, including, without limiting the generality of the foregoing, reasonable attorney's fees; and (b) to the prepayment of the amount then due on account of the Indebtedness, without premium or penalty; and (c) to the Grantor. In the event, however, that in the opinion of the Beneficiary such taking will not materially affect the value of the Mortgaged Property, then the Beneficiary may disburse the entire proceeds of the taking to the Grantor; provided, however, that the Beneficiary shall then have the right to specify the manner in which such proceeds shall be disbursed by the Grantor; and, provided, further, that the payment of the proceeds to the Grantor shall not affect the lien hereof or reduce the amount of Indebtedness.

### ARTICLE VIII

### EVENTS OF DEFAULT

## 8.0  Events of Default.

The term "Event(s) of Default," as used in the Note and in the Security Documents shall mean the occurrence or happening, from time to time, of any one or more of the following or any other occurrences described in this Deed of Trust or in any of the other Security Documents to be an Event of Default thereunder or under this Deed of Trust.

## 8.1  Payment of Indebtedness.

If the Grantor shall default in the payment of any installment of the Indebtedness when and as the same shall become due and payable, whether at maturity or by acceleration or as part of any prepayment or otherwise, and such default shall continue for a period of ten (10) days after written notice thereof from the Beneficiary to the Grantor.

## 8.2  Performance of Obligations.

If the Grantor shall default in the due observance or performance of any of the Obligations and such default shall continue for a period of twenty (20) days after written notice thereof from the Beneficiary to the Grantor; provided however, that no such grace period shall be provided for the Obligations set forth in Sections 4.7, 4.13, 5.2 or 13.16 herein or for any default which could, in the absence of the immediate exercise by Beneficiary of a right or remedy, result in harm to Beneficiary, impairment of the Note or this Deed of Trust or impairment or

-17-

0K9690 0148

loss of or damage or harm to any security for the payment of the Indebtedness or the performance of the Obligations; and provided further that no such notice or grace period shall be provided for any default specifically referred to in the other Sections of this Article VIII.

8.3  Appointment by Receiver.

If by the order of a court of competent jurisdiction, a trustee, receiver or liquidator of the Mortgaged Property or any part thereof, or of the Grantor, shall be appointed and such order shall not be discharged or dismissed within sixty (60) days after such appointment.

8.4  Voluntary Bankruptcy.

If the Grantor shall file a petition in bankruptcy or for an arrangement or for reorganization pursuant to the Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, or if, by decree of a court of competent jurisdiction, the Grantor shall be adjudicated a bankrupt, or be declared insolvent, or shall make an assignment for the benefit of creditors, or shall admit in writing its inability to pay its debts generally as they become due, or shall consent to the appointment of a receiver or receivers of all or any part of its property.

8.5  Involuntary Bankruptcy.

If any of the creditors of the Grantor or other person shall file a petition in bankruptcy against the Grantor or for reorganization of the Grantor pursuant to the Federal Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, and if such petition shall not be discharged or dismissed within sixty (60) days after the date on which such petition was filed.

8.6  Judgments.

If final judgment for the payment of money shall be rendered against the Grantor and the Grantor shall not discharge the same or cause it to be discharged within thirty (30) days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and secure a stay of execution pending such appeal.

8.7  Dissolution.

If Grantor shall dissolve or liquidate, and such dissolution or liquidation is not in connection with a reorganization, merger or consolidation approved in writing by the Beneficiary.

8.8  Guarantors.

If any of the events enumerated in Sections 8.3, 8.4, 8.5, 8.6 or 8.7 hereof shall occur with respect to any guarantor of the payment of all or any part of the Indebtedness or of the performance of any of the Obligations, or if any of such events shall occur with respect to the property of any such guarantor.

8.9  False Representation.

If any representation or warranty made by the Grantor, or others on behalf of the Grantor, under or pursuant to the Note or the Security Documents shall prove to have been false or misleading in any material respect as of the date on which such representation or warranty was made.

-18-

BK 9690 0146

8.10 Default of Other Liens.

If a default occurs under any document or instrument creating a lien or a security interest in the Mortgaged Property, whether senior, junior or of equal priority to the lien and security interest of this Deed of Trust, which default is not cured within any applicable notice, grace or cure period.

8.11 Transfer of Mortgaged Property; Ownership Change of Grantor.

If Grantor shall transfer, or agree to transfer, in any manner, either voluntarily or involuntarily, by operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest therein (including any air or development rights) without, in any such case, the prior written consent of Beneficiary. Beneficiary may grant or deny such consent in its sole discretion and, if consent should be given, any such transfer shall be subject to this Deed and any other documents which evidence or secure the loan secured hereby, and any such transferee shall assume all of the Grantor's obligations hereunder and thereunder and agree to be bound by all provisions and perform all obligations contained herein and therein. A consent to one such transfer shall not be deemed to be a waiver of the right to require consent to future or successive transfers. As used herein "transfer" shall include, without limitation, any sale, assignment, lease or conveyance except leases for occupancy subordinate to this Deed of Trust and to all advances made hereunder or under the Loan Agreement, or, in the event Grantor (or general partner or co-venturer of either of them) is a partnership, joint venture, trust or closely-held corporation, the sale, assignment, conveyance, transfer or other disposition of any of the issued and outstanding capital stock of such closely-held corporation or of any beneficial interest in such partnership, venture or trust, or a change of any general partner or any joint venturer, either voluntarily, involuntarily, or otherwise.

8.12 Taxation of the Deed of Trust.

If it shall be illegal for Grantor to pay any tax referred to in Section 4.20, hereof, or if the payment of such tax by Grantor would result in violation of applicable usury laws.

8.13 Hazardous Waste Cleanup.

In the event any federal, state or municipal environmental authority requests the cleanup or removal of any hazardous waste or hazardous substance, and such cleanup or removal is not commenced within thirty (30) days following such request, and/or the same is not diligently pursued to completion.

8.14 Cross Default.

A default under any obligation or indebtedness owed to the Beneficiary, other than the Obligations and Indebtedness secured by this Deed of Trust, by the Grantor, which default is not cured within any applicable grace or cure period.

ARTICLE IX

DEFAULT AND FORECLOSURE

9.0 Remedies.

If an Event of Default shall occur, then the Trustee or the Beneficiary may, at the option of the Beneficiary, exercise any or all of the following remedies:

-19-

BK9690 0147

(a) Acceleration. By notice in writing to the Grantor, declare the entire unpaid balance of the Indebtedness (if not then due and payable) to be due and payable in full, whereupon the same shall become and be immediately due and payable, anything in the Note or the Security Documents to the contrary notwithstanding.

(b) Entry and Operation of Mortgaged Property. During the continuance of any such Event of Default, the Beneficiary may, by itself, its agents or attorneys, enter into and upon the Mortgaged Property or any part thereof, and may exclude the Grantor and its agents and servants wholly therefrom; and having and holding the same, may use, operate, manage and control the Mortgaged Property and conduct the business thereof, either personally or by its superintendents, managers, agents, servants, attorneys or receivers; and upon every such entry, the Beneficiary, at the expense of the Mortgaged Property, from time to time, either by purchase, repairs or construction, may maintain and restore the Mortgaged Property whereof they shall become possessed as aforesaid, may make such changes in the Improvements as they may deem desirable and may insure the same; and likewise, from time to time, at the expense of the Mortgaged Property, the Beneficiary may make all necessary or proper repairs, renewals and replacements and such useful alterations, additions, betterments and improvements thereto and thereon as to it may deem advisable; and in every such case the Beneficiary shall have the right to manage and operate the Mortgaged Property and to carry on the business thereof and exercise all rights and powers of the Grantor with respect thereto either in the name of the Grantor or otherwise as it shall deem best; and the Beneficiary shall be entitled to collect and receive all earnings, revenues, rents, issues, profits and income of the Mortgaged Property and every part thereof, all of which shall for all purposes constitute property of the Grantor; and after deducting the expenses of conducting the business thereof and of all maintenance, repairs, renewals, replacements, alterations, additions, betterments and improvements and amounts necessary to pay for taxes, assessments, insurance and prior or other proper charges upon the Mortgaged Property or any part thereof, as well as just and reasonable compensation for the services of all attorneys, counsel, agents, clerks, servants and other employees by the Beneficiary properly engaged and employed, the Beneficiary shall apply the monies arising as aforesaid to the payment of the Indebtedness. Whenever all that is due on account of the Indebtedness has been paid in full, the Beneficiary shall surrender possession of the Mortgaged Property to the Grantor.

(c) Foreclosure Sale. Upon an Event of Default, the Trustee personally or by its agents or attorneys, may sell the Mortgaged Property, or any part or parts thereof, and all estate, right, title, interest, claim and demand therein, at public auction at such time and place and upon such terms and conditions as the Trustee may deem appropriate or as may be required or permitted by applicable law or rule of court, having first given such notice prior to the sale of such time, place and terms by publication in at least one newspaper published or having a general circulation in the county or jurisdiction in which the Mortgaged Property is located and at such time or times as may be required by applicable law or rule of court, and at such other times and by such other methods, if any, as the Trustee or any title insurance company, insuring the lien hereof, may deem appropriate.

(d) Letter of Credit. Upon an Event of Default, the Beneficiary may draw on any letter of credit now or hereafter delivered to the Beneficiary as additional security for the Indebtedness. The proceeds of any such letter of credit may be applied against the Indebtedness, in such order as the

-20-

BK9690 0148

Beneficiary shall determine. Further, any notice received by Beneficiary that any such letter of credit shall not be renewed or extended shall constitute an Event of Default upon the occurrence of which Beneficiary may draw on the letter of credit and apply the same against the Indebtedness as aforesaid without any notice, grace, or cure period, notwithstanding anything set forth in this Deed of Trust to the contrary, unless such letter of credit is replaced thirty (30) days prior to its expiration by a letter of credit from a financial institution and on such terms approved by Lender, in its sole discretion.

(e)  Other Remedies.  During the continuance of any Event of Default, the Trustee and the Beneficiary may take such other steps to protect and enforce their respective rights, whether by action, suit or proceeding in equity or at law, or in aid of any power granted in the Note or the Security Documents, or for the enforcement of any other appropriate legal or equitable remedy, or otherwise, as the Trustee or the Beneficiary may elect.

9.1  Assent to the Passing of a Decree - Power of Sale.

If an Event of Default shall occur, then upon the happening of any and every such Event of Default:

(a)  The Grantor, in accordance with applicable law and rules of court, does hereby assent to the passing and entry of a decree for the sale of the Mortgaged Property or enforcing or otherwise relating to any of the remedies set forth in the Note or the Security Documents by any court of competent jurisdiction; and

(b)  The Trustee shall have the power, and is hereby authorized to sell the Mortgaged Property and, in the event of a default by any purchaser at any such sale, to resell the Mortgaged Property, all at the cost and expense of the Grantor.

9.2  Other Security.

Beneficiary may resort to any other security held by the Beneficiary for the payment of the Indebtedness or the performance of the Obligations in such order and manner as the Beneficiary may elect and no such action by the Beneficiary shall operate to limit, modify or terminate any of the rights, powers or remedies contained in the Note or the Security Documents.

9.3  Adjournment of Sale.

The Trustee may adjourn from time to time any sale to be made under, or by virtue of, this Deed of Trust by announcement at the time and place appointed for such sale or for such adjourned sale or sales; and, except as otherwise provided by any rule of law, the Trustee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

9.4  Conveyance by Trustee.

Upon the completion of any sale or sales made by the Trustee under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Trustee or an officer of the court empowered so to do, shall execute and deliver to the purchaser or purchasers a good and sufficient instrument, or instruments, conveying, assigning and transferring all estate, right, title and interest in and to the property and rights sold.  The Trustee is hereby appointed the irrevocable true and lawful attorney of the Grantor in its name and stead to make all necessary conveyances, assignments,

-21-

BK9690 0149

transfers and deliveries of the Mortgaged Property and rights so sold and for that purpose the Trustee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, the Grantor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Nevertheless, the Grantor, if so requested by the Trustee or the Beneficiary, shall ratify and confirm any such sale or sales by executing and delivering to the Trustee or to such purchaser or purchasers all such instruments as may be advisable, in the judgment of the Trustee or the Beneficiary, for the purpose and as may be designated in such request. Any such sale or sales made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of the Grantor in and to the properties and rights so sold, and shall be a perpetual bar, both at law and in equity, against the Grantor and against any and all persons claiming or who may claim the same, or any part thereof from, through, or under the Grantor.

9.5    Acceleration Upon Sale.

In the event of any sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the entire Indebtedness, if not previously due and payable and payable to the Note and the Security Documents, shall immediately become due and payable in full, anything in the Note or the Security Documents to the contrary notwithstanding. If any Event of Default should occur, and following the acceleration of maturity as in this Deed of Trust provided for, a tender of payment by the Grantor of the amount then necessary to satisfy the entire Indebtedness made at any time prior to any sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall constitute an evasion of the prepayment provisions of the Note, if any, and shall be deemed to be a voluntary prepayment of the Indebtedness and, to the extent permitted by applicable law, such payment shall include the prepayment premium required by the Note, if any.

9.6    Purchase by Beneficiary.

In the event of the sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Beneficiary shall be competent to bid for and acquire the Mortgaged Property or any part thereof.

9.7    Separate Sales.

In the event of any sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Trustee may sell the Mortgaged Property or any part thereof in one parcel, as an entirety, or in such parcels and in such manner or order as the Trustee, in the sole exercise of its discretion, may elect.

A-0034

BK9690 0150

### 9.8  Rescission of Election to Accelerate.

In the event the Beneficiary shall elect to accelerate the maturity of the Indebtedness pursuant to the provisions of this Deed of Trust, such election may be rescinded by written acknowledgment to that effect by the Beneficiary; provided, however, that the acceptance of a partial payment on account of the Indebtedness shall not alone affect or rescind such election.

### 9.9  Waiver of Redemption - Exemptions Waived.

Grantor will not at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from attachment, execution or sale of the Mortgaged Property or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Deed of Trust, nor claim, take or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made, pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction; or after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted to redeem the property so sold or any part thereof, and the Grantor hereby expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any right, power or remedy herein granted or delegated to the Trustee or the Beneficiary, but to suffer and permit the execution of every power as though no such law or laws had been made or enacted.  The Grantor, for itself and all who claim under it, waives, to the extent that it lawfully may, the benefit of any homestead exemption and any and all right to have the Mortgaged Property marshalled upon any sale or foreclosure hereunder.

### 9.10  Recovery of Judgment.

During the continuance of any Event of Default, the Beneficiary shall be entitled and empowered to institute such actions or proceedings at law or in equity as it may consider advisable for the collection of the entire unpaid balance of the Indebtedness, and may prosecute any such action or proceedings to judgment or final decree, and may enforce any such judgment or final decree against the Grantor in any manner provided by law. The Beneficiary shall be entitled to recover judgment as aforesaid either before or after or during the pendency of any proceeding for the enforcement of any remedies provided for in the Note or the Security Documents and the right of the Beneficiary to recover judgment as aforesaid shall not be affected by any sale hereunder, or by the passage or entry of a decree of the sale of the Mortgaged Property or any part thereof, or by the enforcement of the provisions of the Note and the Security Documents or the foreclosure of the lien hereof.  In the event of a sale of the Mortgaged Property, and of the application of the proceeds of sale, as in this Deed of Trust provided, to the payment of the Indebtedness, the Beneficiary shall be entitled to enforce payment of, and to receive all amounts then remaining due and unpaid upon the Indebtedness and shall be entitled to recover judgment for any portion of the Indebtedness remaining unpaid, with interest as provided in the Note.  In case of proceedings against the Grantor in insolvency or bankruptcy or any liquidation of its assets, or any proceedings for its reorganization or involving the liquidation of its assets, then the Beneficiary shall be entitled to prove the whole amount due on account of the Indebtedness, without deducting therefrom any proceeds obtained from the sale of the whole or any part of the

-23-

OR9690 0151

Mortgaged Property; provided, however, that in no case shall the Beneficiary receive a greater amount than such amount due on account of the Indebtedness from the aggregate amount of the proceeds of the sale of the Mortgaged Property and the distribution from the estate of the Grantor. No recovery of any judgment by the Beneficiary and no levy of an execution under any judgment upon the Mortgaged Property or upon any other property of the Grantor shall affect, in any manner or to any extent, the lien of this Deed of Trust upon the Mortgaged Property or any part thereof, or any liens, rights, powers or remedies of the Trustee or the Beneficiary hereunder, but such liens, rights, powers and remedies of the Trustee and the Beneficiary shall continue unimpaired as before.

9.11 Appointment of Receiver.

During the continuance of any Event of Default or immediately upon the commencement of any action, suit or other legal proceeding by the Beneficiary to obtain judgment for the amount due on account of the Indebtedness or otherwise in aid of the enforcement of any rights, powers or remedies contained in the Note or the Security Documents, the Grantor, if required so to do by the Beneficiary, will consent to the appointment of a receiver or receivers of the Mortgaged Property and of all of the earnings, revenues, rents, issues, profits and income thereof; provided, however that notwithstanding the appointment of any receiver as aforesaid, the Beneficiary shall be entitled to retain possession and control of the Mortgaged Property. Such receiver shall have all of the powers and authority permitted by applicable law.

9.12 Discontinuance of Proceedings.

In the event the Trustee or the Beneficiary shall commence any proceeding to enforce any right, power or remedy under the Note or the Security Documents and such proceedings shall be discontinued or abandoned for any reason, then in every such case the parties shall be restored to their former positions and the right, powers and remedies of the Trustee and the Beneficiary shall continue as if no such proceedings had been commenced.

9.13 Reserved.

9.14 No Conditions Precedent to Exercise of Remedies.

Neither Grantor nor any guarantor of the payment of all or any part of the Indebtedness or the performance of any of the Obligations shall be relieved of any obligation by reason of the failure of the Beneficiary to comply with any request of Grantor or of any other person to take action to foreclose on this Deed of Trust or otherwise to enforce any provisions of the Note or the Security Documents, or by reason of the release, regardless of consideration, of all or any part of the Mortgaged Property, or by reason of any agreement or stipulation between any subsequent owner of the Mortgaged Property and Beneficiary extending the time of payment or modifying the terms of the Note or the Security Documents without first having obtained the consent of Grantor or such guarantor and, in the latter event, Grantor and all guarantors shall continue to be liable to make payment according to the terms of any such extension or modification agreement, unless expressly released and discharged in writing by Beneficiary.

9.15 Remedies Cumulative and Concurrent.

No remedy conferred upon or reserved to the Trustee or the Beneficiary is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and

-24-

BK 9690 0152

shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary shall be concurrent and may be pursued separately, successively or together against the Grantor, any guarantor of the payment of all or any part of the Indebtedness or the performance of any of the Obligations, or the Mortgaged Property or any part thereof, or any one or more of them; and every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary may be exercised from time to time as often as may be deemed expedient by the Trustee or the Beneficiary.

9.16 **Strict Performance.**

No delay or omission of the Trustee or the Beneficiary to exercise any right, power or remedy accruing upon the happening of an Event of Default shall impair any such right, power or remedy or shall be construed to be a waiver of any such Event of Default or any acquiescence therein. No delay or omission on the part of the Beneficiary to exercise any option for acceleration of the maturity of the Indebtedness, or for foreclosure following any Event of Default as aforesaid, or any other option granted to the Beneficiary hereunder in any one or more instances, or the acceptance by the Beneficiary of any partial payment on account of the Indebtedness, shall constitute a waiver of any such Event of Default and each such option shall remain continuously in full force and effect.

9.17 **Application of Proceeds.**

The proceeds of any sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree or foreclosure and sale, together with any other sums which may then be held by the Trustee or the Beneficiary pursuant to this Deed of Trust, whether under the provisions of this Article or otherwise, shall be applied as follows:

(a) First, to the payment of the costs and expenses of such sale, including, without limitation, compensation to the Trustee and the Beneficiary, their respective agents and counsel, and of any judicial or other proceeding wherein the same may be made, and of all expenses, liabilities and advances made or incurred by the Trustee or the Beneficiary under this Deed of Trust, and all taxes and assessments due upon the Mortgaged Property at the time of such sale and to discharge any other lien prior to this Deed of Trust, except any taxes, assessments or other liens subject to which the Mortgaged Property shall have been sold.

(b) Second, to the payment of whatever may then remain unpaid on account of the Indebtedness, with interest thereon to the date of payment or as otherwise provided in the Note and the Security Documents.

(c) Third, to the payment of any other sums required to be paid by the Grantor pursuant to any provision of the Note or the Security Documents, including, without limitation, all expenses, liabilities and advances made or incurred by the Beneficiary under this Deed of Trust or in connection with the enforcement thereof, together with interest on all such advances.

(d) Fourth, to the establishment of a cash deposit account to be held and maintained by Beneficiary as collateral to secure Beneficiary's liability (whether contingent or otherwise) under any and all letters of credit (including set aside letters) issued by Beneficiary on Grantor's account in connection with the development of the Land, in the aggregate amount of such

-25-

A-0037

BK9690 0153

outstanding letters of credit.  Upon the expiration or return of any such letter of credit (without its having been drawn upon), a portion of such cash collateral equal to the face amount of such letter of credit shall be released to Grantor or other party legally entitled thereto, provided that the amount of cash collateral remaining after such release shall in no event be reduced below the aggregate amount of all such letter of credit remaining outstanding. If any letters of credit are drawn upon, a portion of such cash collateral equal to the amount drawn will be applied immediately to reimburse Beneficiary for such draw and, provided that no further draws are permitted thereon, a portion of such cash collateral equal to the difference between the face amount of such letter of credit and the amount drawn will be released to Grantor or other party legally entitled thereto, provided that the amount of cash collateral remaining after such release shall in no event be reduced below the aggregate amount of all such letter of credit remaining outstanding.

(e)  Fifth, to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive the same upon the delivery and surrender of the Mortgaged Property sold and conveyed and upon the delivery of all records, books, leases, contracts, security deposits, agreements and other materials relating to the Mortgaged Property or the operation thereof to the Trustee or the purchaser.

9.18 Application of Purchase Money.

In the event of any sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the receipt of the Trustee of the payment to them of the purchase money shall be full and sufficient discharge of any purchase of the Mortgaged Property and no such purchaser after paying such purchase money and receiving such a receipt, shall be bound or liable to see to the application of such purchase money.

## ARTICLE X

### THE TRUSTEE

10.0 Acceptance - Standard of Conduct.

Trustee, by acceptance hereof, hereby covenants faithfully to perform and fulfill the trusts herein created; provided, however, that the Trustee shall be liable hereunder only for gross negligence, willful misconduct or bad faith. In any event, the Trustee shall be indemnified and forever held harmless by the Beneficiary for any action which the Trustee may take pursuant to and in reliance upon the written instructions of the Beneficiary.

10.1 Fees and Expenses.

Grantor shall pay all costs, fees and expenses of the Trustee, its agents and counsel, incurred in connection with the performance of the Trustee's duties hereunder.  Nothing contained in this Deed of Trust shall be construed to require the Trustee to make any advances of funds for the benefit of either the Grantor or the Beneficiary for any reason or purpose.

10.2 Commissions on Sale.

In the event of any sale made under or by virtue of Article IX of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Trustee shall be

-26-

BK9690 0154

entitled to retain as compensation a commission equal to Five
percent (5%) of the proceeds of such sale.

### 10.3 Commission on Advertisement.

Immediately upon the first publication of an advertisement
of any sale to be made under or by virtue of Article IX of this
Deed of Trust, whether made under the power of sale therein
granted or under or by virtue of judicial proceeding or of a
judgment or decree of foreclosure and sale, Trustee shall be
entitled to receive as compensation from the Grantor a commission
equal to Two and One-Half Percent (2 1/2%) of the total amount
then due on account of the Indebtedness and, upon the first
publication of any such advertisement, such commission shall be
considered earned by the Trustee, payable by the Grantor, and a
part of the Indebtedness.  The commissions provided for in
Sections 10.2 and 10.3 shall not be cumulative.

### 10.4 Resignation.

Trustee may resign at any time after thirty (30) days'
notice in writing to the Grantor and the Beneficiary.

### 10.5 Acts of Trustee.

In the event more than one person is designated as Trustee
herein, then either or any of them may act without the other when
the circumstances shall so require and the act of either or any
of them shall be considered as the act of both or all.

### 10.6 Successor Trustee - Substitution.

The Beneficiary may remove the Trustee at any time or from
time to time, with or without reason or cause.  In the event of
the death, removal, resignation, refusal to act or inability to
act of the Trustee, or in the sole discretion of the Beneficiary
for any reason, without notice to any party, and without
application to any court, a successor or substitute Trustee may
be appointed by the Beneficiary by a designation in writing of a
successor Trustee by the filing for record in the office where
this Deed of Trust is recorded of a Deed of Appointment.  Such
power of appointment may be exercised whenever and as often as
the Beneficiary may consider it advisable and the exercise of
such power of appointment, no matter how frequently, shall not be
considered a termination thereof.  Upon the recordation of any
such Deed of Appointment, the successor or substitute trustee so
appointed shall thereupon, without further act or deed, become
fully vested with the same title and estate in and to the
Mortgaged Property as the Trustee, as aforesaid, and have all of
the rights, powers, trusts, duties and authority of the Trustee.
Whenever in the Note or the Security Documents reference is made
to the Trustee, such reference shall be held and construed to
mean the Trustee for the time being, whether original, successor
or substitute.

### 10.7 Cooperation - Execution of Documents.

If applicable, and subject to the requirements of each and
every of the other provisions of the Note and the Security
Documents, and provided no Event of Default has occurred which
has not been cured, the Trustee, at the written direction of the
Beneficiary, shall join, at the expense of the Grantor, in
executing plats or plans or subdivision or re-subdivision and
plats or other instruments dedicating public rights-of-way and
easements for public utilities and in the execution of such other
documents which may from time to time be reasonably required in
order to accommodate the purposes hereof and the orderly use and
development of the Mortgaged Property by the Grantor.

-27-

A-0039

BK9690 0165

## ARTICLE XI

### ASSIGNMENT OF PROCEEDS - CONTRACT OF SALE

11.0 **Assignment.**

In order to further secure the payment of the Indebtedness, and the performance and discharge of the Obligations, the Grantor does hereby unconditionally and irrevocably grant, assign, transfer and set over unto the Beneficiary all of the right, title, interest and estate of the Grantor in and to any contracts for the sale of the whole or any of the Mortgaged Property now or hereafter entered into, including, without limitation, all of the proceeds thereof and any funds deposited thereunder to secure performance by the purchasers of their obligations thereunder, and including, again, without limitation, the right at the election of the Beneficiary upon the happening of an Event of Default to receive and collect all such proceeds; provided, however, until an Event of Default, Beneficiary shall permit the Grantor to possess and enjoy the contracts of sale and a license to receive the rents, issues and profits thereof.

In furtherance of the foregoing assignment, the Grantor irrevocably authorizes the Beneficiary, by its employees and agents, at its option upon the happening of an Event of Default, to collect, in the name of the Grantor or in its own name as assignee, the proceeds of any such contract; and, to this end, the Grantor further agrees that it will facilitate in every reasonable way the collection by the Beneficiary of such proceeds, and will, at the written request of the Beneficiary, execute a written notice and deliver the same to each purchaser, directing the purchaser to pay the proceeds to the Beneficiary. In no event shall the Beneficiary be accountable for more monies than it actually receives from the Mortgaged Property, nor shall the Beneficiary be liable for any failure to collect the proceeds of sale; and the right to determine the method of collection and the extent to which the enforcement of collection shall be prosecuted is reserved to the sole discretion of the Beneficiary.

11.1 **Assignment to Third Parties.**

Grantor hereby covenants and warrants to the Beneficiary that, except as may be specifically provided for in the Security Documents to the contrary, it has executed no prior assignment or pledge of the proceeds of the sale of the Mortgaged Property, nor any prior assignment or pledge of its interest in any contract for the sale of the whole or any part of the Mortgaged Property. Grantor will not, without the prior written consent of the Beneficiary, execute any assignment or pledge of the proceeds of the sale of the Mortgaged Property, nor any assignment or pledge of its interest in any contract for the sale of the whole or any part of the Mortgaged Property, whether prior or subordinate to the lien of the Security Documents.

11.2 **Contracts.**

To the extent not provided by applicable law, and to the extent required by the Beneficiary by notice in writing to the Grantor, each contract for the sale of the whole or any part of the Mortgaged Property shall provide that, in the event of the enforcement by the Beneficiary of any of the remedies provided to it by law or by the Security Documents, the purchaser will, upon the written request of the Beneficiary or any person succeeding to the interest of the Grantor as a result of such enforcement, automatically become the purchaser of the Beneficiary or such successor in interest, as the circumstances may require, without change in the terms of the contract. To the extent required by the Beneficiary by notice in writing to the Grantor, each

-28-

A-0040

BK9690 0156

contract for the sale of the whole or any part of the Mortgaged Property shall provide that, upon request by the Beneficiary or any such successor in interest, the purchaser shall execute and deliver to the Beneficiary or any such successor in interest an instrument or instruments confirming such attornment.

Grantor shall furnish to the Beneficiary, within ten (10) days after a written request from the Beneficiary to do so, a written statement containing the names of all purchasers of the whole or any part of the Mortgaged Property and the terms of their respective contracts.

## 11.3 Limitations.

Nothing contained in this Article shall be construed as consent by the Beneficiary to any conveyance, sale, assignment or transfer of the Mortgaged Property or any part thereof unless such conveyance, sale, assignment or transfer is conditioned upon the release of record of this Deed of Trust and the other Security Documents as to that portion of the Mortgaged Property conveyed, sold, assigned or transferred.

### ARTICLE XII

### RELEASES

## 12.0 Release of Lien.

The lien of this Deed of Trust and the other Security Documents shall be released at the expense of the Grantor upon payment in full of the Indebtedness and satisfaction and discharge of the Obligations.

## 12.1 Partial Release No - Release in Default.

Partial releases of the lien of this Deed of Trust and the other Security Documents shall be made in accordance with the terms and provisions of the other Security Documents relating thereto, if any; provided, however, that no partial release shall be sought, requested or required in the event any Event of Default has occurred which has not been cured.

## 12.2 Effect of Partial Release.

The Beneficiary may, regardless of consideration, cause the release of any part of the Mortgaged Property from the lien of this Deed of Trust and the other Security Documents without in any manner affecting or impairing the lien or priority of this Deed of Trust and the other Security Documents as to the remainder of that Mortgaged Property.

## 12.3 Trustee's Fee for Partial Release.

The Trustee may charge a reasonable fee not exceeding Twenty and 00/100 Dollars ($20.00), in advance, for each partial or complete release of the lien of this Deed of Trust and the other Security Documents which the Trustee is required to execute and for each other document or instrument which the Trustee is required to execute.

### ARTICLE XIII

### MISCELLANEOUS

## 13.0 No Warranty By Beneficiary.

By accepting or approving anything required to be observed, performed or fulfilled by the Grantor or to be given to

-29-

Beneficiary pursuant to the Note or the Security Documents, including without limitation, any certificate, balance sheet, statement of profit and loss or other financial statement, survey, receipt, appraisal or insurance policy, the Beneficiary shall not be deemed to have warranted or represented the sufficiency, legality, effectiveness or legal effect of the same, or of any term, provision or condition thereof, and such acceptance or approval thereof shall not be or constitute any warranty or representation with respect thereto by Beneficiary.

13.1 Notices.

All notices, demands, requests and other communications pursuant to the provisions of the Note and the Security Documents shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally or sent by United States Registered or Certified Mail, Return Receipt Requested, postage prepaid, to the respective addresses as follows:

(a)   If to the Grantor, then to it or them at:

15950 Derwood Road
Rockville, Maryland 20855

(b)   If to the Beneficiary, then to it at:

11185 Main Street
Fairfax, Virginia  22030

(c)   If to the Trustee, then to them at:

11185 Main Street
Fairfax, Virginia  22030

Any of the parties may designate a change of address by notice in writing to the other parties.  Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

13.2 No Partnership - Control - Third Parties.

This Deed of Trust contemplates the extension of credit by the Beneficiary, in its capacity as a lender, to the Grantor, in its capacity as a borrower, and for the payment of interest and repayment of principal by the Grantor to the Beneficiary. The relationship between the Beneficiary and the Grantor is limited to that of creditor/secured party, on the one hand, and debtor, on the other hand.  The provisions herein for compliance with financial covenants, delivery of financial statements, and (reserve accounts, look-box arrangements, as applicable) are intended solely for the benefit of the Beneficiary to protect its interests as lender in assuring payments of interest and repayment of principal, and nothing contained in this Deed of Trust shall be construed as permitting or obligating the Beneficiary to act as financial or business advisor or consultant to the Grantor, as permitting or obligating the Beneficiary to control the Grantor, or to conduct the Grantor's operations, as creating any fiduciary obligation on the part of the Beneficiary to the Grantor, as creating any joint venture, agency, or other relationship between the parties other than as explicitly and specifically stated in this Deed of Trust.  The Grantor acknowledges that it has had the opportunity to obtain the advice of experienced counsel of its own choosing in connection with the negotiation and execution of this Deed of Trust and to obtain the advice of such counsel with respect to all matters contained herein, including, without limitation, the provision herein

-30-

relative to the waiver of trial by jury. The Grantor further
acknowledges that it is experienced with respect to financial and
credit matters and has made its own independent decision to apply
to the Beneficiary for credit and to execute and deliver this
Deed of Trust. The terms and provisions of the Note and the
Security Documents are for the benefit of the Grantor, the
Trustee, the Beneficiary, their respective successors, assigns,
endorsees and transferees and all persons claiming under or
through them and no other person shall have any right or cause of
action or account thereof.

13.3 Severability.

In the event any one or more of the provisions of the Note
or the Security Documents shall for any reason be held to be
invalid, illegal or unenforceable, in whole or in part or in any
respect, or in the event any one or more of the provisions of the
Note or the Security Documents operate or would prospectively
operate to invalidate this Deed of Trust, then and in either of
those events, at the option of the Beneficiary, such provision or
provisions only shall be held for naught and shall not affect any
other provision of the Note or the Security Documents or the
validity of the remaining Obligations and the remaining
provisions of the Note and the Security Documents shall remain
operative and in full force and effect and shall in no way be
affected, prejudiced or disturbed thereby.

13.4 Successors and Assigns.

All of the grants, covenants, terms, provisions and
conditions of the Note and the Security Documents shall run with
and bind the Mortgaged Property and shall apply, bind and inure
to the benefit of, the successors and assigns of the Grantor, the
successors in trust of the Trustee and the endorsers,
transferees, successors and assigns of the Beneficiary, and all
persons claiming under or through any of them.

13.5 Modification - Waiver.

None of the terms or provisions of the Note or the Security
Documents may be changed, waived, modified, discharged or
terminated except by instrument in writing executed by the party
or parties against which enforcement of the change, waiver,
modification, discharge or termination is asserted. None of the
terms or provisions of the Note or the Security Documents shall
be deemed to have been abrogated or waived by reason of any
failure or failures to enforce the same.

13.6 Reliance.

In the event the Beneficiary shall elect, pursuant to the
provisions of this Deed of Trust, to make any advances for the
account of the Grantor or for the protection of the validity,
security or priority of the lien hereof, including, without
limitation, any advance made pursuant to the provisions of
Section 4.13 of Article IV of this Deed of Trust, then and in any
of those events, the Beneficiary shall be entitled to rely on any
statement, bill or assessments of any public or quasi-public body
without inquiry into the accuracy or validity thereof and,
further, the Beneficiary shall not be required to inquire into
the validity of any apparent or threatened adverse claim of
title, lien, encumbrance, claim or charge before making an
advance to prevent or remove the same.

13.7 Captions and Headings.

The captions and headings contained in this Deed of Trust
are included herein for convenience of reference only and shall

-37-

BK9690 0159

not be considered a part hereof and are not in any way intended to limit or enlarge the terms hereof.

### 13.8 Counterparts.

This Deed of Trust may be executed in any number of counterparts, each of which shall be considered an original for all purposes; provided, however, that all such counterparts shall together constitute one and the same instrument.

### 13.9 Identification of Note.

The Note has been identified by either the Trustee or by the Notary Public taking the acknowledgments to these presents.

### 13.10 Warranty.

The Grantor warrants specially the title to the Mortgaged Property.

### 13.11 Applicable Law.

The Note, this Deed of Trust and the other Security Documents shall be governed by and construed, interpreted and enforced in accordance with and pursuant to the laws of the jurisdiction where the Mortgaged Property is located.

### 13.12 Time of Essence.

Time shall be of the essence of each and every provision of the Note and the Security Documents of which time is an element.

### 13.13 Nature of Loan.

Grantor hereby represents and warrants that it is a business or commercial organization and further represents and warrants that the loan secured by this Deed of Trust was made and transacted solely for the purpose of carrying on or acquiring a business or commercial enterprise.

### 13.14 Waiver of Jury Trial.

Grantor hereunder hereby (a) covenants and agrees not to elect a trial by jury of any issue triable of right by a jury, and (b) waives any right to trial by jury fully to the extent that any such right shall now or hereafter exist. This waiver of the right to trial by jury is separately given, knowingly and voluntarily, by the Grantor, and this waiver is intended to encompass individually each instance and each issue as to which the right to a jury trial would otherwise accrue. The Beneficiary is hereby authorized and requested to submit this Deed of Trust to any court having jurisdiction over the subject matter and the parties hereto, so as to serve as conclusive evidence of Grantor's herein contained waiver of the right to jury trial. Further, the Grantor hereby certifies that no representative or agent of the Beneficiary (including the Beneficiary's counsel) has represented, expressly or otherwise, to the Grantor that the Beneficiary will not seek to enforce this waiver of right to jury trial provision.

### 13.15 Cross Default.

It is understood that should an event of default occur under any of the documents relative to the loan evidenced by the Note, any and all loans made by the Beneficiary to the Grantor will, at the Beneficiary's option, immediately be rendered in default. It is understood that should an event of default occur in the due observance or performance of any obligation of the Grantor to the

-32-

A-0044

BK9690 0160

Beneficiary in connection with any other loan of the Beneficiary to the Grantor, whether or not related to the subject matter of the Security Documents, then the loan evidenced by the Note shall, at the Beneficiary's option, be rendered in default. In addition, should the Beneficiary ever be required to fund on account of any letter of credit which has been or will be issued for the benefit of the Grantor, then this loan and all loans made to the Grantor shall immediately be rendered in default.

13.16   Uniform Commercial Code - Security Agreement.

This Deed of Trust is also intended to be a security agreement pursuant to the Uniform Commercial Code of the jurisdiction in which the Mortgaged Property is located with respect to any of the items described as a part of the Mortgaged Property which, under applicable law, may now or hereafter be deemed to be personal property, fixtures or property other than real estate or which, otherwise, may be subject to a security interest under the Uniform Commercial Code, and the Grantor (as "debtor") hereby grants to the Beneficiary (as "secured party") a security interest in any and all such items. All such items are to be used by the Grantor solely for business purposes and are to be installed upon the Mortgaged Property for the Grantor's own use or as a part of equipment and furnishings supplied by the Grantor to tenants of the Mortgaged Property. Except as otherwise provided for in the Security Documents, all such items will be kept upon the Land, and will not be removed therefrom without the consent of the Beneficiary, and such items may be affixed to the Land and will not be affixed to any other real estate. Grantor agrees to execute and deliver to the Beneficiary, from time to time and without expense to the Beneficiary, any financing statements and any extensions, renewals or amendments thereof, in such form as the Beneficiary may reasonably require in order to further evidence or perfect a security interest in such items. If an Event of Default shall occur, the Beneficiary, in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute, shall have all of the rights and remedies of a secured party under the Uniform Commercial Code. Unless the context otherwise specifies or requires, the terms and provisions contained in this Section 13.16 shall have the meanings specified in the Uniform Commercial Code. The filing of any financing statement with respect to any part of the Mortgaged Property shall never be construed to impair the lien of this Deed of Trust or any of the other Security Documents, and the intention of the Grantor is that all portions of the Mortgaged Property are, and at all times and for all purposes and in all proceedings, both legal and equitable, shall be regarded as a part of the real estate. Grantor agrees that Beneficiary may file this Deed of Trust, or a reproduction hereof, in the real estate records or other appropriate index, as a financing statement for any of the items specified above as a part of the Mortgaged Property. Any reproduction of this Deed of Trust or of any other Security Agreement or financing statement shall be sufficient as a financing statement. Without the prior written consent of Beneficiary, Grantor shall not create or suffer to be created pursuant to the Uniform Commercial Code any other security interest in said items, including replacements and additions thereto. Upon Grantor's breach of any covenant or agreement of Grantor contained in this Deed of Trust, including the covenants to pay when due all sums secured by this Deed of Trust, Beneficiary shall have the remedies of a secured party under the Uniform Commercial Code and, at Beneficiary's option, may also invoke the remedies provided in this Deed of Trust as to such items. In exercising any of said remedies, Beneficiary may proceed against the items of real property and any items of personal property specified above as part of the Mortgaged Property separately or together and in any order whatsoever, without in any way affecting the availability of Beneficiary's remedies under the Uniform Commercial Code or of the remedies provided in Article IX of this Deed of Trust. To the extent

-33-

BK9690 0151

permitted under the Uniform Commercial Code, the Grantor waives
all rights of redemption and all other rights and remedies of a
debtor thereunder and all formalities prescribed by law relative
to the sale or disposition of the items described in this Section
after the occurrence of an Event of Default hereunder and to all
other rights and remedies of the Grantor with respect thereto.
In exercising its right to take possession of said items upon the
occurrence of an Event of Default hereunder, the Beneficiary may
enter upon the Mortgaged Property without being guilty of
trespass or any other wrong-doing, and without liability for
damages thereby occasioned. To the extent any notice of sale or
other disposition of said items is required and cannot be waived,
in the event the Beneficiary elects to proceed with respect to
said items separately from the real property, Beneficiary need
give no more than ten (10) days notice of the sale of said items.
All recitals in any instrument executed by the Beneficiary
incident to any sale, transfer, assignment, lease or other
disposition or utilization of said items or any part thereof
shall be full proof of the matter stated therein and no other
proof shall be required to establish full legal propriety of the
sale or other action taken by the Beneficiary or of any fact or
condition incident thereto, all of which shall be deemed
conclusively to have been performed or to have occurred. The
Grantor shall reimburse the Beneficiary, on demand, for all
reasonable expenses of retaking, holding, preparing for sale,
lease or other use or disposition, selling, leasing or otherwise
using or disposing of said items which are incurred or paid by
the Beneficiary, including, without limitation, all attorneys'
fees, legal expenses and costs, and all such expenses shall be
added to the Grantor's obligations to the Beneficiary and shall
be secured hereby.

13.17   Future Advances - Loan Agreement.

     This Deed of Trust is given to secure not only the existing
Indebtedness, but also future advances (including re-advances, if
any) whether such advances are obligatory or are to be made at
the option of the Beneficiary, or otherwise, to the same extent
as if such future advances were made on the date of the execution
and delivery of this Deed of Trust. The total amount of the
Indebtedness so secured may increase or decrease from time to
time; provided, however, that the aggregate Indebtedness so
secured at any one time shall not exceed the amount recited in
the preamble to this Deed of Trust, plus interest thereon, and
all other amounts, payments and premiums due on account thereof,
and all other Indebtedness of the Grantor to the Beneficiary
payable pursuant to or secured by the Security Documents, and all
other payments required to be made by the Grantor pursuant to or
secured by the Security Documents.

     Grantor covenants and agrees to perform each and every of
the covenants and agreements made by it in the Loan Agreement,
the terms of which are incorporated by this and other reference
as though fully set forth herein, and the performance of which is
secured by the lien hereof. The lien hereof secures, among other
things, payment by the Grantor to the Beneficiary of all advances
(including re-advances, if any) made by the Beneficiary pursuant
to the Loan Agreement, together with interest thereon from the
date of each such advance and all other amounts payable by the
Grantor pursuant to the terms and provisions of the Loan
Agreement.

13.18   Sale of Participation.

     Grantor recognizes that Beneficiary may sell and transfer
interests in the loan evidenced by the Note to one or more
participants and that all documentation, financial statements,
appraisals and other data, or copies thereof, relevant to the

-34-

BK 9690 0162

Grantor, and any guarantor of the loan, may be exhibited to and retained by any such participant or prospective participant.

13.19  Covenants Running with the Land.

All covenants contained in the Security Documents shall run with the Mortgaged Property.

13.20  Environmental Audit - Cleanup.

Promptly upon the written request of the Beneficiary from time to time, when the Beneficiary has a reasonable basis therefor, the Grantor shall provide the Beneficiary, at the Grantor's expense, with an environmental site assessment or environmental audit report prepared by an environmental engineering firm acceptable in the reasonable opinion of the Beneficiary, to assess with a reasonable degree of certainty the presence or absence of a Hazard and the potential costs in connection with abatement, cleanup or removal of any hazardous substance found on, under, at or within the Mortgaged Property. In the event of any Hazard, the threat of any Hazard, or the presence of any hazardous substance affecting the Mortgaged Property, whether or not the same originates or emanates from the Mortgaged Property or any contiguous real estate, and/or if the Grantor shall fail to comply with any environmental agency, authority, law or regulation, the Beneficiary may at its election, following written notice of not less than thirty (30) days from the Beneficiary to the Grantor but without the obligation so to do:  (a) give such notices and/or cause such work to be performed at the Mortgaged Property; and/or (b) take any and all other actions as the Beneficiary shall deem necessary or advisable in order to abate the Hazard, or cure the Grantor's noncompliance.  Any amounts so paid by the Beneficiary pursuant to this Section, together with interest thereon at the default rate of interest on the Note from the date of payment by the Beneficiary, shall be immediately due and payable by the Grantor to the Beneficiary and until paid shall be added to and become a part of the Indebtedness and shall be secured by this Deed of Trust.

ARTICLE XIV

STATUTORY PROVISIONS

This Deed of Trust is made under and pursuant to the provisions of the Code of Virginia, Sections 55-59, 55-60, 26-49 and 55-58.2, as amended, and shall be construed to impose and confer upon the parties hereto and Beneficiary all the rights, duties, and obligations prescribed by said Sections 55-69, 55-60, 26-49, and 55-58.2, as amended, except as herein otherwise restricted, expanded or changed, including without limitation the following rights, duties and obligations described in short form:

(a)  All exemptions are hereby waived.

(b)  Subject to call on default.

(c)  Renewal, extension, or reinstatement permitted.

(d)  Substitution of trustees collectively or of any of them individually by the beneficiary is permitted for any reason whatsoever, and any number of times without exhaustion of the right to do so.

(e)  Trustee's commission in the event of advertisement but payment before sale, reasonable fees not in excess of 2.5% of the outstanding indebtedness.

-35-

A-0047

BK9690 0163

(f)  Advertisement required, once a week for two successive weeks.

(g)  Any trustee may act.

IN WITNESS WHEREOF, the said Grantor has executed these presents under seal on the year and day first above written.

CLIFTON GREENS, INC.,
a Maryland corporation

By: _____ [SEAL]
Name: _____
Title: _____

COMMONWEALTH OF VIRGINIA )
                        )  ss:
COUNTY OF _____ )

The foregoing instrument was acknowledged before me in the aforesaid jurisdiction this ___ day of _____, 1996, by _____, President of CLIFTON GREENS, INC., a Maryland corporation.

_____
Notary Public

My commission expires: 9/30/99

\clifton.dot

-36-

DK9690 0164

## "EXHIBIT A"

All that certain lot, piece or parcel of land, with improvements thereon and appurtenances thereto, belonging, lying and being in Fairfax County, Virginia and more particularly described as follows:

Lots 1, 2, 3, 5, 11, 12, 13, and 18, ROSE HALL, as the same appears on a Plat attached to "DEED OF DIVISION, DEDICATION AND EASEMENT" recorded in Deed Book 8945 at Page 628, among the land records of Fairfax County, Virginia.

APR 30 96

RECORDED FAIRFAX CO V